267 So.2d 798

**Lavonnie HODGES**

v.

**STATE.**

**4 Div. 60.**

Court of Criminal Appeals of Alabama.

Oct. 3, 1972.

No brief for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment charged the appellant with robbery. The appellant entered a plea of not guilty. The trial resulted in a verdict of guilty with punishment fixed at imprisonment in the penitentiary for twenty years and a judgment in accordance therewith. Hence, this appeal.

Monroe Helms testified in substance that he knew the appellant; that he heard of the robbery of the Junior Food Store in Headland; that on the date of the robbery appellant came to his filling station between sunset and dark in a Volkswagen and a lady was with him at that time; that the lady was a young "blackheaded" girl; and that appellant asked the witness the way to the Junior Food Store. This witness further described the Volkswagen driven by appellant as dark colored but could not state its exact color.

Harry Swallop testified in substance that he was the manager of Junior Food Store in Headland; that at about 10:45 P.M. on the night of April 30, 1969, he was getting

ready to close when he looked up and saw a man with makeup all over his face and looked down and saw a gun; that this man said, "I guess you know what this is;" that the witness then said, "Yes sir, you can have it all;" and hit the no sale button and spread the money out on the counter; that the man then said, "Stack it up. Don't get nervous on me . . . That's not all of it. You have a safe;" that the witness stated, "I don't have a safe" and "I don't have a wallet;" that the witness "started to point outside to say a police car was coming by at this time, and he was gone;" that he took the money with him; and that the money consisted of $63.00. This witness described the man who took the money as having dark brown hair combed straight back with a high forehead and high cheekbones, and said he had makeup all over his face, had on a black turtleneck sweater, and held in his hand what looked like an automatic pistol which was pointed at the witness at all times during the robbery, and that the robber had on light colored trousers. This witness examined State's Exhibit No. 1, a black sweater, and stated it looked similar to the one worn by the robber at the time of the robbery. This witness further testified that he called the police after the robber left; that as he ran across the street to get to a telephone to call the police he heard a car leave and that in his judgment it was a small car; that the car left from a street just behind his store; and that this happened in Headland, Henry County, Alabama.

Neil Cook testified in substance that he was on April 30, 1969, a police officer of Headland; that he went to the Junior Food Store on the report of a robbery; that he saw Henry Swallop there; that he found the telephone wire "intwo"; that Swallop gave him a description of the robber, and that he put the description on the air.

Joe Tom Masters, Captain with the State Department of Public Safety and an Investigator for that Department, testified in substance that he went to the Junior Food Store; that Swallop gave him a description of the robber; and that he put a description of the robber and the car on the air.

Grady Tew, a State Trooper, testified that after twelve midnight on the morning of May 1, 1969, he met the appellant riding in a Volkswagen on old U. S. 230 at or near the Dale and Houston County line; that he turned around and followed appellant; that a lady was with appellant; that he had received a call to be on the lookout for a car fitting the description of the car appellant was riding in; that he followed appellant who turned off on a dirt road; that he turned the blue light on and appellant would not stop; that appellant ran in behind Bama Truck and Equipment Company, jumped out of the car and ran into the woods; that the defendant in the courtroom was the person who jumped out of the car and ran; that as he ran, the witness followed in the trooper car, stopped it and ran after appellant; that he did not catch the defendant; that he returned to the Volkswagen and found a lady in it; that he looked through a window of the Volkswagen and saw a bag on the back seat, an "awol" bag, and saw a "black turtleneck sweater with part of it sticking out of the bag there, an arm sticking out of the bag;" that seven or eight minutes later Sgt. Harwood arrived at the scene and shortly thereafter Capt. Masters arrived; that the condition of the Volkswagen had not changed from the time he got there until Harwood and Masters arrived at the scene and that nothing had been touched before Harwood and Masters came; that Katie Wilkes was the lady in the Volkswagen; that he did not know who the people in the Volkswagen were before it stopped; that he knew the person who ran from the car by sight but not by name; that he saw an arm of a black turtleneck sweater and at the time he first saw the sleeve, he just assumed it was also a turtleneck sweater; and that he had a sideview of the person who ran from the car.

Joe Tom Masters was recalled and testified in substance that he went to the scene at the Bama Truck and Equipment Company where the Volkswagen was stopped; that when he got there he found Sgt. Harwood and Trooper Tew, the Volkswagen and Katie Nell Wilkes; that in the Volkswagen he found a blue zipper bag; that the Volkswagen belonged to Katie Nell Wilkes; that he saw a woman's purse in the Volkswagen; that the blue zipper bag was open and about halfway out was a black turtleneck sweater and in the woman's purse was a damp man's white T-shirt; that he could see the bag by looking into the car and could see the sweater also; that he removed the blue zipper bag and the lady's purse from the Volkswagen; that in the purse he found a billfold that had $63.00 in a clip in it, 31 one dollar bills and 5 five dollar bills, and that he found in it six dollars in other bills which were separate from the $63.00; that when he got to that place the woman was under arrest and in the patrol car; that the T-shirt he found was in the lady's purse; and that other items bearing appellant's name were in the billfold found and were admitted into evidence as State's Exhibit No. 5. The billfold, the money, sweater and T-shirt were also admitted into evidence.

Harry Swallop was recalled and identified the appellant as the person who robbed him at the time in question and pointed him out in the courtroom.

The evidence offered on behalf of the State further tended to show that the officers stopping the Volkswagen at the Bama Truck and Equipment Company had been informed by message, on the air of the robbery, with a description of the robber, his clothing and the Volkswagen and that the appellant was the person believed or suspected of being the robber with orders to apprehend.

On the trial of the case the appellant objected to the admission of the items found in search of the Volkswagen on the grounds that they were the results of an unlawful search and seizure. He also objected to the officers' testifying they saw such items on the same grounds. These objections were overruled and said evidence was admitted.

We now come to a consideration of the admissibility of the evidence obtained in the search of the automobile belonging to Katie Nell Wilkes after appellant ran away from it and to which he never returned.

In the case of Aldridge v. State, 278 Ala. 470, 179 So.2d 51, the court said:

"The right to protection against an unlawful search is personal, and a defendant in a criminal case who denies any proprietary or possessory interest in seized property has no standing to object to the method of seizure. Shurman v. United States (5th Cir.), 219 F.2d 282; United States v. Serrano (2nd Cir.), 317 F.2d 356; Williams v. United States (10th Cir.), 323 F.2d 90; United States ex rel. Smith v. Reincke, D. C., 239 F. Supp. 887."

See Guenther v. State, 282 Ala. 620, 213 So.2d 679, and Baldwin v. State, 282 Ala. 653, 213 So.2d 819.

In the case of Cameron v. State, Fla. App., 112 So.2d 864, an automobile driven by Cameron and in which Wesley Pless was a passenger, was stopped by officers. The two men were arrested on suspicion, the automobile was searched, and articles taken therefrom. The officers later learned that the articles taken from the automobile in the search were the products of a robbery. Cameron and Pless were indicted and tried for the robbery and the articles taken from the automobile were admitted in evidence over their objection. There, the court said:

"While the exact question does not appear to have been heretofore considered or passed upon by our Supreme Court, it is clear from a review of other authorities that the constitutional guarantee to be secure against unreasonable searches and seizures accrues only to the persons in whom is vested the lawful right of

possession of the premises searched, and does not extend to others who might incidentally be on the premises at the time the search is made. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; United States v. Pepe, 2 Cir., 247 F.2d 838; Lovette v. United States, 5 Cir., 230 F.2d 263; Connolly v. Medalic, 2 Cir., 58 F.2d 629; United States v. Messina, 2 Cir., 36 F.2d 699.

"Since defendant Pless was neither the owner nor had the lawful right to possession of the automobile which was the subject of the search resulting in seizure of the stolen property, he was not in position to object to the search and seizure. This would be the case even if the search and seizure had been unlawful as to Cameron. The evidence seized was therefore admissible in the trial of the charges against him."

A leading case on "standing to object to the admission of evidence the product of unreasonable search and seizure" is Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, in which the court said:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' People of State of N. Y. ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190, 51 L.Ed. 415. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy."

In that case the court further stated:

" . . . We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. . . . Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards."

■ It is true that the evidence in the case at bar was sufficient to show that the appellant was a guest in the Volkswagen at the time and prior to the time the officer stopped it, but it also shows that he left the automobile and the scene prior to its search and did not return to it. A guest in an automobile does have standing to object to an unlawful search of the car. However, at the time the automobile was searched the appellant was not a guest in the car. He had been gone therefrom for some time and did not return to it. He was later arrested at another place. The appellant had no standing to object to its search and the seizure of the items admitted in evidence. The items seized were properly admitted in evidence and the testimony of the officers as to what they found and saw in the car was also admissible in the light of the decisions hereinbefore cited.

■ The evidence offered on behalf of the appellant was an effort to show that the in-court identification of the appellant

by the robbery victim was tainted by the extra-judicial identification. However, the victim carefully observed the appellant during the course of the robbery and could and did give an accurate description of him. He, therefore, had an independent source for the in-court identification and the in-court identification was admissible.

We have carefully searched the record and find no reversible error therein.

It is ordered and adjudged by the court that the judgment in this cause be affirmed.

The foregoing opinion was prepared by L. S. MOORE, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.

All the Judges concur.