272 So.2d 910

Ollie Willie JONES

v.

STATE.

8 Div. 225.

Court of Criminal Appeals of Alabama.

Jan. 30, 1973.

No brief from appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

NICOL, Circuit Judge.

The appellant, Ollie Willie Jones, was convicted in the Circuit Court of Madison County, Alabama, being then charged with robbery in an indictment. His plea to the charge was "not guilty." The jury imposed a sentence of ten years imprisonment in the state penitentiary as punishment.

We have searched the record, as required, and pursuant to the Alabama Code. The fact that appellant was arrested, and premises at the location of his arrest were searched without a warrant of arrest or search warrant, confronts us with constitutional issues to be resolved on this appeal. All other considerations presented by the record, in our opinion, are free from error to reverse.

As we turn to such constitutional issues presented by the Fourth Amendment by virtue of the warrantless arrest and search, it requires that a "Pandora's Box" containing a multitude of decisions on such issues must be delved into. Such consideration will, of course, require a detailed statement of all facts of this case which we find to be as follows:

Witness, Otis William Graves, testified that he was alone in his neighborhood grocery store on Maysville Road in Huntsville, Alabama, on the night of February 15, 1971. At about 7 p. m., a stranger, a black man, came in the store and made inquiry regarding bologna and was directed to the proper store counter. This customer also inquired about some crackers being available in small packs, and these were located near the bologna. Two packages of crackers and one package of bologna were brought to Graves to "ring up" the sale.

As the cash drawer came open, an accomplice came into the store and pointed a revolver at Graves and stated, "This is a holdup." Then the accused told Graves, "Lay down on the floor," and Graves laid face down on the floor. Then accused took the money from the cash register and asked where Graves kept his gun. Graves replied that he had no gun. The accused then asked about other money bags and was informed there were no more. Accomplice said, "Come on," or "Let's go," as appellant seemed to be looking around for additional items. Graves saw accused drop one of the cellophane wrapped packages of crackers on the floor, where it remained. At about the same time, appellant took from Graves pockets three Twenty Dollar bills, a "Champ" cigarette lighter, and a billfold containing Seventeen Dollars. Immediately thereafter, the two suspects left. As stated, the small package of crackers was left lying on the floor in view of Graves, just as it was when dropped by the accused. Graves immediately called the Huntsville Police, and the officers arrived on the scene in a matter of minutes. Graves furnished a description of the two suspects. He reported that approximately $171.13 was taken from his person, and the cash register, along with his wallet, and "Champ" cigarette lighter. Graves described the suspects as being black men, and the revolver pointed toward him as having copper colored slugs in its cylinder.

Detective James F. Thompson, of the Huntsville Police, arrived with other officers at the scene within a few minutes of the call from Graves or at about 7:05 p. m. Graves pointed out on the floor the small package of crackers dropped by the suspect. Thompson "dusted" the cel-

lophane wrapping on the package of crackers seeking "latent" fingerprints and was successful in so doing. The officer next took this cellophane wrapping to one, Beech, a fingerprint expert, employed by the Huntsville Police.

Beech testified that he compared the latent print "raised" by witness with appellant's print appearing on his master fingerprint card on file with the sheriff of Madison County. Beech examined the "latent" print on the cellophane wrapping, given him by Detective Thompson, with appellant's "known" print on the "master" card (the print being a print of the left thumb) and determined that the prints were identical. The testimony of Beech described this, in fact, as a positive identification of appellant.

The victim, Graves, was shown a photograph of appellant, and he could make no positive identification. Shortly thereafter, however, appellant was taken into custody, and Graves identified him in a police line-up.

At approximately 10:30 p. m., on the evening of the robbery, the appellant was taken into custody, this being the conclusion of a continuing investigation of some three hours.

No warrant of arrest was issued for appellant's arrest.

No search warrant issued for the simultaneous search which produced evidence to convict and weapons used to effect the robbery.

Appellant was located inside the house of one Barbara Rogers, 2620 Venetian Way, Huntsville. The record does not disclose the occasion of appellant's being at this address at the time of arrest. The Rogers woman later described appellant as her "lover." The house was listed in the name of Barbara Rogers.

According to the police, she said she owned the home.

As the officers entered, appellant appeared at the top of some steps in a hallway in the house. Appellant was arrested and handcuffed. The testimony of the police was to the effect that in the presence of accused, Barbara Rogers was advised that appellant was being arrested for a robbery which had just occurred that night, and that the police were looking for guns and money. In this same conversation, the police testified, that they asked for and were given permission to search the house. They said permission to search was given by the owner, Barbara Rogers, who was then and there informed that the police were looking for guns used, and money taken, in the robbery. The police testimony further showed that permission to search was given in the presence of accused, Jones, and that accused made no statement whatsoever at this time.

We note here, that Barbara Rogers at the trial denied giving such permission to search. She stated the officers cursed and started searching immediately after placing appellant under arrest. At the trial she also said appellant was her "lover" and had been boarding with her about four months, occupying the same bed. It should also be noted that the Rogers woman was later charged with being the accomplice in the robbery.

The house search proved to be very fruitful. A cigarette lighter was found on a bedroom table and a pair of dark glasses, fitting the description of those worn by appellant during robbery, were found on the dresser in the bedroom.

The search resulted also in the location of a bank bag, with change in it, in a bedroom. A similar bag was taken in the robbery, and it contained an assortment of change. A quantity of paper currency similar to that taken in the robbery was found behind the dresser in a bedroom and was held in place by being pressed against the wall by the dresser.

The officers found two revolvers secreted in a kitchen wall behind a panel. One

of the weapons was identified by witness, Graves, as the robbery gun and it was loaded with copper coated bullets when seized. The lighter, money, bag, glasses, and revolvers were admitted in evidence over objection of appellant.

The appellant did not testify in his own behalf. The Rogers witness and her woman boarder, Pat Holmes, testified the three of them, appellant, Rogers, and Holmes had been together at the Rogers' house at the time of the robbery. Both women denied any knowledge whatsoever of appellant's participation in the robbery.

■ We first consider the warrantless arrest of appellant in the light of probable cause. We hold, under the exigent circumstances, the officers had probable cause to arrest when they entered the Rogers' house. The evidence established that the "latent" fingerprints left on the cellophane wrapper held and then dropped by appellant could only be the fingerprints of appellant to the exclusion of any other person. We consider such proof as persuasive proof insofar as the identification of appellant is concerned.

■ Further, under all the exigent circumstances of this case and upon consideration of the seriousness of the offense of robbery, appellant's arrest here was valid. The Fourth Amendment does not require police officers to delay in the course of an investigation of this kind, if to do so would endanger their lives or the lives of others. Speed here, we hold, was essential and only a thorough search of the house for persons and weapons could have insured that appellant was the only man present, and that the police had control of all weapons that could be used against them or to effect an escape. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

The Supreme Court of the United States has recognized that the question whether a search of premises without a warrant is justified as an incident to a valid arrest depends upon whether such a search is "unreasonable" under the Fourth Amendment, and that the reasonableness depends on the facts and circumstances of the particular case.

■ The cases make clear that only in "a few specifically established situations" may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409. The record before us discloses the existence of such an exceptional situation.

■ Moreover, we have in this case evidence that witness, Rogers, consented to the search. When the accused denies any proprietory or possessory interest in the property searched or seized, he cannot object to the legality of said search or seizure. Hodges v. State, 49 Ala.App. 1, 267 So.2d 798; Baldwin v. State, 282 Ala. 653, 213 So.2d 819 (1968); Moore v. State, 44 Ala.App. 113, 203 So.2d 460 (1967), cert. den. 281 Ala. 723, 203 So.2d 465.

■ Where there is conflicting evidence as to whether or not a party consented to a search, the trial court is in the better position to determine the facts indicating consent or a lack thereof. Payton v. State, 47 Ala.App. 347, 254 So.2d 351. (hn. 5)

It would hardly be reasonable to condemn a police search which was conducted with the consent of a person who appeared to be the owner (Barbara Rogers), who, in the presence of the accused, and without his objection, asserted ownership and consented to the search.

■ In conclusion, state officers are required, whenever practicable, to obtain a search warrant before conducting a search. A search of premises without a warrant cannot be justified as an incident to an arrest, if it would have been practicable to obtain a warrant. Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

**442**

However, under the facts of this case, and under all the exigencies of this case, we consider that it was not practicable to have obtained such warrant. Therefore, we conclude that there has been no infringement of appellant's constitutional rights. It follows that appellant's conviction should be and is hereby affirmed.

The foregoing opinion was prepared by FRED W. NICOL, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Sec. 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

Affirmed.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.