Appellant was indicted, tried, and convicted pursuant to the statute that provides for a sentence of death or life imprisonment *Page 1078 
without parole in certain aggravated offenses. Acts 1975, No. 213. The jury found him guilty and fixed his punishment at death. The court thereafter conducted a hearing pursuant to § 3 of the Act and in accordance with § 4 sentenced defendant to life imprisonment without parole.
The indictment charged that defendant and two others, Zebedee Hayes and Howard Lee Prothro, feloniously robbed Luther Monroe Shoffeitt and, while committing the robbery, intentionally killed Shoffeitt by shooting him with a shotgun. Upon request of appellant-defendant he was granted a severance and tried separately.
The evidence without conflict unquestionably shows that shortly after 10:30 A.M. on December 16, 1976, Mr. Shoffeitt was robbed and shot to death by a shotgun while he was operating the G.W. Hewitt General Merchandise store in the Pinehill Community; Mr. Shoffeitt arrived for work at approximately 7:45; Mr. Hewitt left Shoffeitt at the store with approximately three hundred dollars in cash and a .25 automatic pistol. Mr. Hewitt's wife saw Mr. Shoffeitt when she went to the store at approximately 10:30 A.M. and left about ten minutes later. About ten minutes after Mrs. Hewitt left, Roscoe Livingston, an RC Cola salesman, arrived at the store and discovered Mr. Shoffeitt's body blocking the front door entrance. He immediately went to a nearby country store and returned with the proprietor thereof to the Hewitt store, which they entered, and found Mr. Shoffeitt lying against the front door in a pool of blood. He was dead at the time.
According to the testimony of eminent expert witnesses, Mr. Shoffeitt had died as a result of a gunshot wound to his chest. The pellets found in his chest were No. 4 shot and the size of the wadding disclosed that the gun used was a twelve-gauge shotgun.
There was considerable testimony by a large number of witnesses respectively, as hereafter named, as to the movements of a green Vega automobile with a white stripe on it and no tag on the morning of the crime. Mr. Ocie Coefield saw the automobile at about 8:00 A.M. and again at about 9:00 A.M. at Morrison Cross-Roads, about eight or nine miles from the Hewitt store, at which times it was occupied by three black men. Mrs. Ferry Stewart, one of the proprietors of a store at Morrison Cross-Roads observed a green automobile with a white stripe and no tag parked at the Stewart's store at about 10:30 A.M. Two black men were in the automobile at the time and the driver looked like appellant-defendant. A third black man came into the store, but suddenly turned around stating that he had forgotten what he had "come in for" and then left and returned to the automobile. Joyce Foster, the proprietor of Foster's store, identified appellant-defendant as one of three black men who entered her store at about 10:00 A.M. The store was located about ten miles from the Hewitt store. The three men were in a green Vega with a white stripe. No purchase was made by appellant-defendant. About 10:30 A.M. Marie Meadows, who lived about three miles from the store where Mr. Shoffeitt was killed, saw a small green automobile with white stripes turn around in her driveway.
At about 10:30 A.M. the same day, Ralph Iverson, while passing the Hewitt store saw a green automobile back into a dirt road, about three or four hundred yards from the store. He said there were three "colored people" in the automobile and that one of them had a gun.
On the day, but after the time of the robbery and homicide, Ertest Blanks, who had previously employed Zebedee Hayes and Howard Prothro, saw them as they came near where Blanks and others were building a house in Heflin, Cleburne County. With them was another black man. Prothro lived about a quarter of a mile from where the house was being built. The three men were there about five or ten minutes and then walked off. This occurred between 11:30 and 11:45.
Chief Deputy Sheriff Taylor, of Cleburne County, having received a dispatch as to the homicide and robbery and information as to the green Vega with a white stripe and no *Page 1079 
tag at about 3:15 of the day of the homicide, proceeded in an attempt to locate the automobile. Soon thereafter, he located a similar automobile at the Western Auto Store in Heflin. He saw Howard Prothro start from the automobile toward the back of the store building. Dave Thomas was standing on the right side of the vehicle with the door open and attempted to get back in the automobile. Armed with a gun, the officer ordered them both to stop. At that time Piedmont police drove up and assisted in the arrest and search of Thomas and Prothro. The automobile was transported to the Cleburne County jail. A search warrant for it was obtained. Upon searching the automobile a .25 caliber automatic pistol that was missing from the Hewitt store was found. A search warrant was also obtained for the residence of L.J. Prothro, the father of Howard Prothro, where Howard Prothro was living. Obtained therefrom were two twelve-gauge shotguns.
State Investigator William Traylor, of the Alabama Bureau of Investigation, testified that he interviewed appellant Thomas at the Cleburne County jail at Heflin on the evening of December 16, 1976, and obtained a statement from him, which was handwritten at the time by an officer. He said appellant stated then that he could not write, but that he afterwards found that appellant could write, and he obtained another statement from him on December 21 at the Randolph County jail which was promptly typed, and appellant signed it. The second statement, or a substituted photocopy thereof, was introduced in evidence. Officer Traylor testified in detail that appellant was given plenary advice and warnings as to all of his constitutional rights at the time such statement was made; that he read to appellant the contents of the waiver of rights form; that appellant expressed his understanding thereof and signed the waiver of rights form on the occasion the second statement was made and typed. According to the witness, appellant said that Hayes and Prothro came to his house about 6:00 A.M., December 16, 1976, and that the three went to Heflin. They stopped near a school house at Heflin and obtained two twelve-gauge shotguns out of the trunk of a red Chevrolet and put them in the Vega. Prothro and Hayes told him they were going to get some money, and Hayes said "he would kill if he had to get it." They left Heflin and went to Randolph County, stopped at some stores and saw that they were crowded; they discussed the subject of robbery and the probable necessity for killing someone. They "went back to the store where the man got shot and parked next to the garage." Appellant's statement continued as follows:
 "Zebedee said for Howard to go in and see if everything was alright and to come back and ask what kind of drinks we wanted. While Howard was gone Zebedee told me that if he had to shoot the man, he would. I told him that I didn't have the heart to shoot anyone. Howard came back to the door of the store and asked us what kind of drink we wanted. That was the signal for us to come in. I handed him the gun with the black tape on it and I took the other one. We both went into the store about the same time. This old man was coming up the aisle between the counter and the drink box and Zebedee told him this is a stick-up, and pointed his gun toward the man. The man said I have one too, and pulled a gun out of his back pocket and pointed it towards Zebedee's chest. Howard came up behind the man and threw his arm around his neck and began to choke him. The man was still pointing his pistol toward Zebedee and trying to pull the trigger. Zebedee shot him in the chest and Howard dropped the man, because he thought he had been shot also, when Howard dropped the man Zebedee went behind the cash register and got the money and put it in his pocket. Zebedee told Howard to get the pocket book and anything in it. Zebedee said to let's get out of there because he had done shot somebody. I told them to go ahead. I stopped and picked up the pistol and put it in my pocket. I jumped in the back seat, Howard was driving and Zebedee was in the front." *Page 1080 
He said they divided the money, which amounted to $49 apiece. He said it was "between 10:30 and 11:00 A.M. when we robbed this store and Zebedee shot the man."
At the conclusion of the evidence for the State, defendant moved to exclude the evidence. The motion was overruled, and defendant rested without offering any evidence.
The evidence was sufficient to support the verdict of the jury, and there was no error in the court's overruling defendant's motion to exclude the evidence. By his statement, appellant endeavored to place himself in a more favorable light than the other two defendants, and perhaps he was not as aggressive as the other two in the perpetration of a planned robbery, in which it was obvious that murder might be committed if necessary. We are not unmindful of the provision of § 2 (a)(14), (b) of Acts 1975, No. 213, that "Evidence of intent under this section shall not be supplied by the felony-murder doctrine." We hold that it cannot. Even so, notwithstanding appellant's references to his claimed reluctance to kill, his conduct under all the circumstances is sufficient basis for a logical finding that he stood ready, willing, and able to kill if necessary. The self-serving features of his admission are to be considered in the light of his natural interest. They may have constituted part of the mitigating circumstances that prompted the trial judge to reduce punishment from death to life imprisonment, but they cannot serve to mandate a reasonable doubt as to appellant's intentionally aiding and abetting Hayes in killing Mr. Shoffeitt. Appellant may have preferred not to shoot the victim, he may have hoped that the robbery could be accomplished without killing him, but his presence without protest, armed with a gun in the commission of a planned robbery, is strong evidence of his intention to kill if and when a homicide became necessary.
A large number of rulings of the court in admitting in evidence, over the objection of defendant, testimony of various witnesses as to the movements and occupants of the green Vega automobile with a white stripe and no tag on the morning of the crime, are argued in mass by appellant as bases for reversible error.
In objecting to such items of evidence, it was usually urged that the particular evidence did not show any connection between appellant and the movements of the automobile and the activities of its occupants. In some instances, the particular evidence did not show such a connection, but in others it did. The admissibility of each item of such evidence does not depend upon its competency, standing alone, to impute guilt to defendant. It is admissible if, in connection with all other items of circumstantial evidence, it is worthy of consideration as a logical link of a chain of circumstances pointing to defendant's guilt. In Turney v. State, 16 Ala. App. 134,75 So. 726, 727, cert. denied, 200 Ala. 700, 76 So. 998 (1917), it was said:
 ". . . Where evidence is circumstantial, it is proper to permit the state to show facts which, though standing alone, might be without probative force, yet, when connected by evidence with other facts, are material. . . ."
In cases based largely upon circumstantial evidence, the testimony may rightly take a wide range, and much discretion must be vested in the trial court as to its admissibility.Dockery v. State, 269 Ala. 564, 570, 114 So.2d 394, 399 (1959);Creel v. State, 53 Ala. App. 504, 301 So.2d 267 (1974); Bass v.State, 55 Ala. App. 88, 313 So.2d 208 (1975); McClendon v.State, Ala.Cr.App., 341 So.2d 174, writ quashed, 341 So.2d 178
(1976).
Objections to the admission in evidence of the pistol taken from the Vega automobile pursuant to a search warrant and the twelve gauge shotguns similarly obtained from the home of Prothro which challenged the validity of the warrants on grounds somewhat different on the trial from the grounds insisted on upon appeal, were properly overruled. The evidence in its entirety shows that appellant had no interest in the automobile from which the *Page 1081 
pistol was obtained. According to the undisputed evidence, the pistol was the one that was stolen from the store. Furthermore, the evidence shows without dispute that appellant did not have any claim to or property right in either of the shotguns obtained from the home of Prothro and his father. In no way was any right of privacy or property of appellant violated. Only those persons whose privacy or whose proprietary or possessory interest in property has been invaded have standing to object to a search or seizure. Hodges v. State, 49 Ala. App. 1,267 So.2d 798 (1972); Jones v. State, 49 Ala. App. 438,272 So.2d 910 (1973); Bridges v. State, 52 Ala. App. 546, 295 So.2d 266
(1974); Wilson v. State, 57 Ala. App. 124, 326 So.2d 316, cert. denied 295 Ala. 429, 326 So.2d 319 (1975); Brown v. State, Ala.Cr.App., 339 So.2d 125 (1976).
It is contended that prior to the trial the court ordered the State to furnish appellant with copies of all statements "made by this defendant," that defendant had been furnished with a copy of the typed statement signed by him on December 21, 1976, but had not been furnished with a copy of the statement purportedly made by him on December 16. Defendant objected to the introduction of each statement. The statement of December 16 was not admitted in evidence.
We can readily see some basis for a misunderstanding as to what the State was to furnish appellant-defendant, but it is clear that there was no intentional withholding of the copy of any document the court had ordered to be delivered to defendant or that defendant had requested. The first statement was shown defendant and his counsel during an interrogation, out of the presence of the jury, of the witness who took both statements. Ample time was afforded defendant and his counsel to study both statements and compare the statement exhibited at that time with the statement previously furnished. It appears that no motion for a mistrial was made, but appellant argues that a mistrial should have been granted by reason of the State's failure before trial to furnish defendant with a copy of the statement purportedly made by him on December 16. As there was no intentional withholding of information and as it appears that defendant was not harmed by his not having a copy of the statement of December 16 at the time the trial commenced, there was no basis for a mistrial. A fortiori, the trial court was not in error in not ordering a mistrial ex mero motu. Perry v.State, 56 Ala. App. 454, 322 So.2d 745 (1975).
The court refused defendant's requested charge 3:
 "I charge you Ladies and Gentlemen of the Jury, that if you believe from the evidence, that the Defendant was illegally searched and seized in Heflin, Alabama, that you will disregard all evidence that may have been found."
There was no evidence that in any way indicated that appellant-defendant was illegally searched and seized in Heflin, Alabama. The charge did not relate in any way to the search of the automobile or to the search of the residence of Prothro. Moreover, the evidence shows without dispute that nothing was found on defendant when he was arrested, searched and taken into custody. The charge was properly refused. Like considerations justify the refusal of defendant's charge 4.
Defendant's refused charge 5 directed the jury to disregard the statement made by defendant "against his interest" if the jury "believe" that it was "brought on by fear, undue influence, hope of reward or any other illegal act of the state." No contention was made on the trial of the case, no contention is made here, that there is any basis for a finding that the "admission against interest" statement of defendant was not voluntary in every respect or that the evidence did not conclusively rebut the presumption of its involuntariness. The central theme of defendant's defense was that, even though he had confessed to a robbery of which he was guilty according to the undisputed evidence, he was not guilty of the intentional killing of Mr. Shoffeitt, and for that reason was not guilty of the offense that called for a verdict fixing the punishment at death. There was no evidence in the case that warranted the giving *Page 1082 
of the charge. Moreover, the hypothesized belief of the jury was not predicated upon the evidence, which of itself justified the refusal of the charge. Otwell v. City of Birmingham,23 Ala. App. 299, 124 So. 406 (1929).
We have looked for error in the record prejudicial to substantial rights of appellant and have found none. However, the record indicates that the trial court failed to ask defendant if he had anything to say as to why sentence should not be pronounced upon him. In accordance with the authorities now cited and many others, the judgment of conviction should be affirmed but the cause must be remanded for proper sentence.Gaines v. State, 52 Ala. App. 29, 288 So.2d 810, cert. denied,292 Ala. 720, 288 So.2d 813, cert. denied, 419 U.S. 851,95 S.Ct. 92, 42 L.Ed.2d 82; McGuff v. State, 49 Ala. App. 88,268 So.2d 868, cert. denied, 289 Ala. 746, 268 So.2d 877.
The judgment of conviction is affirmed but the cause is remanded for proper sentence.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED. Remanded for proper sentence.
All the Judges concur.
 ON RETURN TO REMANDMENT