LEIGH M. CLARK, Retired Circuit Judge.
Appellant was convicted on an indictment charging him with the unlawful possession of “Phendimetrazine, a controlled substance, in violation of the Alabama Uniform Controlled Substances Act,” and sentenced to imprisonment for five years.
About 3:30 P.M., November 30,1977, five officers, equipped with a search warrant to search “the person” of defendant or “the premises” or “the vehicle described as a green and white house trailer” of defendant, on the east side of County Road 45, approximately eleven miles from the courthouse in Cullman, Alabama, went to said trailer, or mobile home, of defendant and his wife and conducted a search of the mobile home and an outhouse[1] located about thirty steps from the mobile home. One of the officers went to the outhouse, opened the door and found a large black garbage bag containing an assortment of tablets (pills). The tablets were delivered to a toxicologist of the Department of Toxicology and Criminal Investigation, who, according to her testimony, examined some of the tablets, which all looked alike, and found that they contained phendimetrazine.
The major contention of appellant is that the trial court erred in admitting in evidence the contents of the bag found in the “outhouse.” Appellant strenuously urges that the search of the outhouse is not encompassed by the search warrant. He is right. Furthermore, if defendant had standing to invoke the Fourth Amendment as to the searching of the outhouse, we would have a close question as to the validity of such search and as to the admissibility of the evidence obtained therefrom. The warrantless search of a locked storehouse does not come within the “open fields” area of permissible search and seizure without a warrant. Adair v. State, 53 Ala.App. 251, 298 So.2d 671 (1974).
Under the undisputed evidence, which included the deed to the property upon which the outhouse was located showing in effect that defendant had no legal interest there *54 in, testimony of the owner of the premises upon which the outhouse was located and testimony of defendant himself, it is clear that defendant neither had nor claimed any right to the use of the outhouse. The position of his attorney throughout the trial of the case was to the same effect. He stressed this, as he should have done, in emphasizing the inapplicability of the search warrant to the outhouse.
The rights protected by the Fourth Amendment are personal in nature and may be asserted only by those whose own rights have been, or will be, violated by the search and seizure. Thomas v. State, Ala.Cr.App., 358 So.2d 1076 (1978); Brown v. State, Ala.Cr.App., 339 So.2d 125 (1976). Defendant had no standing to invoke the Fourth Amendment as to the search and seizure in the outhouse. Such search and seizure did not constitute an infringement upon defendant’s right to be secure in his person, house, papers, and effects, against unreasonable searches and seizures.
Objection to the admission of the tablets in evidence on the ground that the evidence did not show that the tablets examined by the toxicologist were the same as those that were found in the outhouse is not supported by the evidence. The officer who found the tablets testified that he turned them over to another, who testified that he turned them over to a third officer,. who testified that he turned them over to the toxicologist who testified as to the analysis. Each of the two intervening persons testified that the pills were in the same condition when he turned them over to his successor in custody as they were when he received them from his predecessor; the first officer testified that they were in the same condition when he found them as they were when he delivered them to another, and the toxicologist testified that they were in the same condition when she received them as they were when she examined them. The toxicologist testified also that the individual pills were indistinguishable in appearance from one another.
Appellant also argues that the court was in error in not granting his motion for a mistrial, which he grounded on repeated references by witnesses and attorneys to the search warrant. It was unfortunate, we think, that so much attention was directed to the matter of the search warrant, which proved to be of little value to anyone, particularly the State; as the contraband found and seized was not obtained pursuant to the search warrant. Our review of the record convinces us, however, that neither party was any more responsible then the other for the injection of the matter of the search warrant into the case and the excessive emphasis thereon. It appears that neither side was certain as to what was intended by the other as to the search warrant and this resulted in changes in position by each. The warrant was never exhibited to the jury; none of its contents was read to the jury, and the court excluded it from the evidence. It would be purely conjectural to say that any harm whatever to defendant resulted from references to the search warrant, and we find that the court was not in error in its rulings as to it, including its overruling Of defendant’s motion for a mistrial.
The most difficult question presented is as to the sufficiency of the evidence to sustain the verdict, which was raised by defendant’s motion to exclude, which was treated by the court as a motion for a directed verdict in favor of defendant, and was overruled.
If what we have stated constituted all of the evidence as to defendant’s guilt of possession of the controlled substance alleged in the indictment, we would probably not be able to sustain the judgment. In addition, the evidence showed that at the time the officers arrived in an automobile in front of the mobile home, defendant was seen walking toward his house in a path from the outhouse to the mobile home. There was evidence also that the officers talked with defendant and fully advised him of his rights against self-incrimination and all of his rights as to an attorney without expense to him, and that defendant voluntarily discussed the matter with them. He never expressly admitted that the tablets were *55 his, or had ever been in his possession, but, according to the testimony of the officer who found the pills, defendant asked him while only the two of them were together, how far “he was out there,” and when the officer replied, “I stepped off thirty-three steps.” the defendant said, “well, it has got to be over fifty, hasn’t it?” According to the evidence of the officer, the officer then said, “I don’t know.” The same officer testified:
“I asked Mr. Hanvey how he knew that we were coming out there on the search? And, he looked at me and said, well, said, I didn’t have any indication, information or anything from town or anywhere. There was a boy that stopped by the house that had seen a police car setting over on the side of the road and told me that looked like he was waiting on another car or something, and if I had anything I had better hide it. And, I got what of it I could hid before y’all got here.”
All of the circumstances considered, including the incriminating statement of defendant as testified to by the witness for the State, there was substantial evidence of defendant’s guilt, and the trial court was not in error in overruling defendant’s motion to exclude the evidence.
We should say also that defendant’s testimony in his own behalf, though in denial of guilt of possession of the pills found in the outhouse and in denial of his making the incriminating statement testified to by the witness for the State, did not necessarily help his side of the case. In an attempted explanation of his presence near the outhouse, he testified that his dog had killed a goat, that he hung the goat and had just drawn it and had taken the entrails and dumped them in the woods near the outhouse just before the officers arrived.
On rebuttal, the officer who found the contraband in the outhouse, testified that defendant in his conversations with him never said anything about taking the viscera of a goat anywhere. Furthermore, the officer testified that defendant had no blood on his hands or clothes, that defendant did not wash his hands, that the witness never smelled the odor of goat about defendant at any time and that defendant was in his presence practically all of the time the witness was at defendant’s home and that the two rode together in an automobile to the jail. The officer testified, and there was other evidence, that a dead goat partly skinned was hanging from a tree at the time. Another officer testified in rebuttal substantially in accordance with the officer who found the pills in the outhouse as to defendant’s failure to say anything about drawing the goat and taking its viscera away and to the apparent absence of any blood upon defendant’s hands or clothes.
We should probably say also that defendant’s wife testified in his behalf to the effect that she had never seen the contents of the plastic garbage or trash bag until the officers brought it to the mobile home and emptied it. She also said that she knew defendant was in the process of dressing a goat, but that she did not see him take anything away from the mobile home or the area in which the goat was said to have been eviscerated.
Although the evidence is not conclusive and the possibility of defendant’s innocence is obvious, the verdict of the jury is not to us palpably wrong or unjust, and we would not be justified in reversing the conviction.
We have found no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.

. We will hereafter use the term “outhouse” as it was consistently used by witnesses and attorneys during the trial of the case. It should be noted, however, that the parties are in agreement that the designated house did not in November 1977 have the legal or technical status of an “outhouse” as that term is often employed in statutes or other legal authorities, as shown by Black’s Law Dictionary and 30A Words and Phrases. The parties are in agreement that in the past the particular structure had been an outdoor toilet of the occupants of a nearby dwelling, but that in November 1977 it was not used generally as a toilet by anyone and that its use in general was limited to the storage of some boards by the owner of the property upon which it was located, and that it was not within the curtilage of the mobile home occupied by defendant and his wife.