[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 442 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 443 
On November 7, 1988, the appellant, John Thomas Landreth, was convicted of the murder of Michael Crane, in violation of §13A-6-2, Code of Alabama 1975. He was sentenced to 20 years' imprisonment. On June 21, 1989, the appellant moved for a new trial, and a hearing on that motion was held on August 4, 1989. Because of the illness of an essential witness, however, the hearing was continued until April 8, 1991. The appellant's new trial motion was subsequently denied. He then filed a notice of appeal on June 26, 1991, but the appeal was dismissed for noncompliance with A.R.App.P. 587 So.2d 1113. On August 5, 1991, the appellant was granted this out-of-time appeal.
The state's evidence tended to show that, on the afternoon of December 11, 1987, the appellant shot and killed Michael Crane, his sister's husband, at the victim's residence in Chambers County, with a Remington semi-automatic 30-06 caliber rifle. Just before the shooting, Crane, his wife, and their two children were standing on a deck behind their house. The appellant, who lived next door and who was standing on his back deck about 50 yards away from Crane, yelled and pointed a rifle at Crane. He lowered the rifle and Crane's 10-year-old son ran into the house, returning with a Winchester 30-30 lever-action rifle. Crane then held the rifle up and pointed it in the direction of the appellant.
The appellant said, "I am going to kill you, you son of a bitch" and shot his rifle. After pushing his children into the house, Crane fired a shot into the air, away from the appellant. The appellant then shot again, this time hitting Crane in the upper chest or shoulder, fatally wounding him.
The motive for the homicide is not at all clear. Crane and his family had recently moved into their house. The house had been occupied by the appellant's parents until his parents' divorce proceeding began.
The appellant presents five issues on appeal.
 I
Initially, the appellant contends that the trial court committed reversible error by denying his motion to suppress the following evidence: two statements that he made, the murder weapon, and two spent cartridges.
The state's evidence tended to show that Lanett Chief of Police Robert Vincent arrived at the scene of the crime and ascertained from bystanders that the appellant, who Vincent noticed was watching from his deck next door, had shot the victim. Vincent and two other officers then walked to the appellant's residence and asked "Who fired the round?" (R. 629.) When the appellant indicated that he had, Vincent asked where the rifle was. The appellant told them that it was "in the house in the corner" and started to enter the premises. Chief Vincent, however, stepped in front of the appellant, entered the premises, and retrieved a Remington semi-automatic 3006 caliber rifle. (R. 579.) The officer inspected the rifle and noted that the safety was off, one cartridge was in the chamber and four others were in the clip. Vincent seized only the gun and made no further search of the premises. The appellant was then arrested and was taken to the police station, where he later made a tape-recorded statement after being advised of his rights under Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Page 444 
After seizing the rifle, Vincent returned to the victim's residence, where he found a spent cartridge from the victim's gun. He then returned to the appellant's yard and discovered two spent 30-06 cartridges in the grass below the deck.
Initially, the appellant argues that the statements he made at the scene of the crime and the gun and spent cartridges that were seized should have been suppressed. He contends that the seizure the gun and the cartridges resulted from illegal questions asked of him after he had been taken into custody but before he had been advised of his Miranda rights.
Miranda safeguards do not apply when one is not "in custody."Hubbard v. State, 500 So.2d 1204 (Ala.Cr.App.), affirmed,500 So.2d 1231 (Ala. 1986), cert. denied, 480 U.S. 940,107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). Whether one is "in custody" turns on whether "a reasonable person in the defendant's position would believe that he is not free to leave." Robinson v. State,574 So.2d 910, 913 (Ala.Cr.App. 1990).
Furthermore, even if one is in custody, the procedural safeguards "outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." Rhode Islandv. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689,64 L.Ed.2d 297 (1980). In deciding whether the questioning of a suspect is "custodial," the following factors should be considered:
 "whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of questioning, how the suspect got to the place of questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence of guilt, and the degree of pressure applied to detain the suspect."
P.S. v. State, 565 So.2d 1209, 1214 (Ala.Cr.App. 1990). See also, Finch v. State, 518 So.2d 864 (Ala.Cr.App. 1987).
The facts as set out above indicate that the appellant was not under custodial interrogation and was not in custody when the police asked him who did the shooting and where the gun was located. We hold that the circuit court did not err in denying the motion to suppress the statements, the gun, and the cartridges on these grounds.
The appellant further contends that the circuit court erred when it received the 30-06 rifle and its spent cartridges into evidence. He asserts that they were the fruits of independent warrantless searches, each of which was unconstitutionally conducted. The appellant also contends that the statement procured at the police station should have been suppressed because it involved responses to questions regarding the illegally obtained spent cartridges.
Although warrantless searches and seizures are per se unreasonable, an exception is recognized where probable cause coincides with exigent circumstances. See, generally, Youtz v.State, 494 So.2d 189 (Ala.Cr.App. 1986). The search and the arrest in this case were supported by probable cause because the appellant admitted to officers at the scene that he had done the shooting. See, e.g., Smith v. State, 466 So.2d 1026
(Ala.Cr.App. 1985).
Exigent circumstances exist when officers are faced with a situation where the immediate safety of the public is threatened. Jones v. State, 49 Ala. App. 438, 272 So.2d 910
(1973). See also, 2 W. LaFave, Search and Seizure: A Treatiseon the Fourth Amendment § 6.5(d) (2d ed. 1987). An officer's compelling need to protect himself or innocent bystanders outweighs an accused's constitutional rights, so long as the action taken to remove the threat is reasonable. See, e.g.,Bragg v. State, 536 So.2d 965 (Ala.Cr.App. 1988); Edwards v.State, 515 So.2d 86 (Ala.Cr.App. 1987). Cf., King v. State,521 So.2d 1042 (Ala.Cr.App. 1987), cert. denied, 521 So.2d 1050
(Ala. 1988).
In this case, the appellant admitted to the officers that he had done the shooting and told them the exact location of the *Page 445 
weapon. Having been told that the rifle was just inside the house, but not knowing whether anyone else was in the house, Chief Vincent acted reasonably to protect himself, his fellow officers, and several bystanders by stepping in front of the appellant, entering the premises, seizing the rifle, and leaving the house immediately thereafter. According to the facts as recited above, Vincent's taking possession of the murder weapon did not constitute an unreasonable search and seizure and thus did not violate the appellant's Fourth Amendment protections. See, e.g., Pope v. State, 367 So.2d 998
(Ala.Cr.App. 1979).
Further, the trial court did not err by allowing the two spent 30-06 cartridges to be received into evidence, despite the fact that they were seized pursuant to a warrantless search. Under the plain view exception to the warrant requirement, an officer may seize evidence of a crime if he is legitimately on the premises where he views the evidence and if the incriminating nature of the evidence is "immediately apparent." Williams v. State, 527 So.2d 764 (Ala.Cr.App. 1987).[1]
Where officers are lawfully on the scene investigating a crime and evidence is observed in plain view, that evidence may be lawfully seized, despite the absence of a search warrant. Duckv. State, 518 So.2d 857 (Ala.Cr.App. 1987); Smith, supra;Pearson v. State, 356 So.2d 776 (Ala.Cr.App. 1978).
In this case, Vincent was legitimately on the scene of the crime when he discovered the cartridges. Thus, the plain view exception would apply to the warrantless seizure of the spent cartridges.
No error was committed by the trial court in denying the appellant's motion to suppress.
 II
The appellant further contends that the trial court erred by denying his motion for a new trial.
First, the appellant argues that he should have been granted a new trial based on the state's failure to produce exculpatory evidence, i.e., a tape-recorded statement by the appellant and various photographs, in violation of a discovery order.
Before trial, appellant's counsel filed a motion for discovery, requesting, among other things, any written or recorded statement made by his client and any photographs that would aid the defense in the preparation of its case. The record, however, reveals no ruling on that motion. Accordingly, this issue has not been preserved. Review on appeal is limited to matters as to which the trial court makes adverse rulings.Donahoo v. State, 552 So.2d 887 (Ala.Cr.App. 1989); Jackson v.State, 484 So.2d 1174 (Ala.Cr.App. 1985).
Appellant's counsel further contends that the trial court erred in denying his motion for a new trial on the ground of newly discovered evidence.
In order to establish that a new trial is warranted based on newly discovered evidence, the appellant must demonstrate:
 "(1) that the evidence will probably change the result if a new trial is granted; (2) that the evidence has been discovered since the trial; (3) that the evidence could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue [of the appellant's guilt]; and (5) that it is not merely cumulative or impeaching."
Marks v. State, 575 So.2d 611, 616 (Ala.Cr.App. 1990); Stout v.State, 547 So.2d 894, 897-98 (Ala.Cr.App. 1988), affirmed,547 So.2d 901 (Ala. 1989). The circuit judge is in the best position to assess whether the appellant has met his burden as to the new evidence in light of all that has previously transpired. We will accord every presumption in favor of the correctness of the circuit court's decision. Clements v. State,521 So.2d 1378 (Ala.Cr.App. 1988). *Page 446 
Appellant's counsel contends that he has newly discovered evidence tending to prove that the police tampered with a tape-recorded statement made by the appellant. After moving for a new trial, the appellant requested an opportunity to analyze the tape recording. After the court granted his request, the appellant obtained the services of an audio technician who listened to the tape. The appellant now argues that the technician's analysis is newly discovered evidence warranting a new trial.
Before trial, the appellant was given a transcript of the statement, and, on the first day of trial, had an opportunity to listen to the tape. After listening to the tape, the appellant made no motion and did not seek a continuance. The technician's testimony could have been obtained before trial and therefore does not qualify as newly discovered evidence. See, e.g., Hamrick v. State, 548 So.2d 652 (Ala.Cr.App. 1989);Gass v. State, 431 So.2d 1347 (Ala.Cr.App.), cert. denied, Exparte Weldon, 431 So.2d 1350 (Ala. 1983).
The appellant also contends that his sister could testify to the involuntariness of the tape-recorded statement procured from him at the police station. The appellant, however, has not demonstrated that this evidence could not have been discovered before the trial through the exercise of due diligence.Dossey v. State, 489 So.2d 662 (Ala.Cr.App. 1986); Gass, supra.
Finally, the appellant argues that a juror's failure to respond truthfully to a question on voir dire that would have disqualified her as a juror and denied his right to a fair and impartial trial. The appellant contends that Mrs. Betty Woody, whose husband is a police officer, failed to disclose this relationship after the venire was asked if any of them were related to a law enforcement officer.
Here, the record shows that the appellant's counsel was present in the room when the roll for the venire was called, at which time Mrs. Woody stood and stated that her husband was employed with the Lafayette Police Department. Also, several veniremembers testified that when the appellant asked the venire during voir dire if any member was related to a law enforcement employee, Mrs. Woody did raise her hand and held it up until the appellant began to question another veniremember who had responded affirmatively. After he finished questioning the respondent, the appellant asked, "Anyone else related to law enforcement officials now or in the past? Anybody been employed by law enforcement?" (R. 34.) Mrs. Woody had already stated her husband's occupation and had raised her hand. She did not again raise her hand. The question suggested that counsel was seeking to determine whether anyone other than those who had already responded affirmatively was within the category. We do not find a failure to respond truthfully.
In light of the above, the trial court did not err in denying the appellant's motion for a new trial upon this ground.
 III
The appellant's next contention is that the trial court erred by restricting his cross-examination of two witnesses.
First, the appellant argues that the trial judge denied him the opportunity to elicit from Detective Sergeant Robert Chambers of the Lanett Police Department various prior inconsistent statements made by a witness who was in the victim's house at the time of the shooting, thereby unduly restricting his right to cross-examine.
During his cross-examination of Chambers, the appellant asked, "[D]o you remember what [Carla Cruse, the witness] said to you? Whether or not she stated —." (R. 446.) The state objected, and the trial judge sustained. No explanation or offer of proof was made. On its face, the question appeared to call for inadmissible hearsay. Because the appellant's question called for inadmissible hearsay and there was no offer of proof, the trial court did not err in sustaining the state's objection. C. Gamble, McElroy's Alabama Evidence § 425.01(5), (8) (4th ed. 1991). See also, Freeman v. State, 453 So.2d 776
 *Page 447 
(Ala.Cr.App. 1984); Futral v. State, 558 So.2d 991 (Ala.Cr.App. 1989).
Thereafter, the appellant continued his cross-examination of Chambers as follows:
"Q: Did you talk to Carla [Cruse]?
"A: Yes, I did.
"Q: What did she say to you at that time?
"[THE STATE]: Objection.
 "[APPELLANT]: Your Honor, I have asked her previously if she testified differently.
 "[THE STATE]: I don't think [the appellant] laid the proper predicate when he was asking Carla those questions.
 "THE COURT: I'm going to sustain the objection at this point."
(R. 447) (emphasis added).
Here, the appellant did make an offer of proof, but had asked a question that, on the surface, called for a reply that is clearly hearsay. "When a question . . . calls for inadmissible testimony, a mere statement by the questioning counsel that he expects a specified answer which, if made, would be legal evidence, will not put the court in error for sustaining an objection to the question." Gamble, supra; § 425.01(6).
The appellant also contends that the circuit judge unduly restricted his cross-examination of Lanett Chief of Police Robert Vincent on two different occasions. We find that these issues, however, were not presented to the trial court.
The appellant presents a new ground for one of his objections for the first time on appeal. Specific grounds for his objection were stated at trial and all others not specified are therefore waived. Cole v. State, 548 So.2d 1093 (Ala.Cr.App. 1989).
After reviewing the cross-examination set out above, we find no error.
 IV
The appellant also contends that the trial court erred in denying his multiple motions for mistrial based on alleged prosecutorial misconduct. However, these contentions were not preserved for appellate review.
Initially, the appellant contends that, when asking certain questions, the state implied the existence of facts that could not be proven by lawful evidence. The appellant stated no grounds for his mistrial motion other than that the prosecutor was asking "impermissible" questions. A general objection that does not specify grounds preserves nothing for review.Thompson v. State, 575 So.2d 1238 (Ala.Cr.App. 1991).
The appellant also argues that the trial court erred in not declaring a mistrial when the state asked him a question regarding the victim's expertise with a gun. The appellant, however, did not move for a mistrial at this time. Thus, no adverse ruling was made for this court to review. Gibson v.State, 555 So.2d 784 (Ala.Cr.App. 1989); Goodson v. State,540 So.2d 789 (Ala.Cr.App. 1988).
The state asked a defense witness whether he had heard that the appellant had threatened to kill the appellant's brother. After this question, the appellant moved for a mistrial without stating any ground, and the court denied the motion. Nothing was preserved for review.
 V
Finally, the appellant contends that the trial court erred in allowing Chief Vincent to give testimony that invaded the province of the jury.
At trial, Vincent was asked to give his opinion, based on the distance between the locations of two spent cartridges, on whether the appellant's rifle was in a different position each time it was fired. The appellant objected, arguing that the question was "outside any expertise [Vincent] would have" and "calls for an unauthorized conclusion." (R. 25.) The trial judge overruled the objection.
The appellant now argues that Vincent's answer invaded the province of the jury. The trial court was not given the opportunity to consider this ground. Accordingly, the trial court did not err in this instance. *Page 448 
We have considered the other issues presented by the appellant, and we conclude that no error occurred.
The judgment in this case is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] Under Horton v. California, 496 U.S. 128, 110 S.Ct. 2301,110 L.Ed.2d 112 (1990), the requirement that the discovery of the evidence be inadvertent is no longer recognized under the plain view exception. See also, LaFave, supra, § 7.5(d).