Richard C. DAVIS, Petitioner,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida Department of Health and Rehabilitative Services, Respondent.

Civ. No. 69–410.

United States District Court,
M. D. Florida,
Tampa Division.

Aug. 11, 1971.

**40**

Jame M. McEwen, for petitioner.

Charles Corces, Jr., Asst. Atty. Gen. of Fla., Lakeland, Fla., for respondent.

## ORDER

KRENTZMAN, District Judge.

This cause came on for consideration upon a petition for writ of habeas corpus filed by Richard C. Davis, in forma pauperis. The petitioner is in state custody pursuant to a state court judgment. Petitioner raises two separate grounds for relief: (1) That petitioner was immune from prosecution for the crime for which he was convicted because he was compelled to incriminate himself in violation of his privilege under the United States Constitution and laws of the State of Florida, and (2) that petitioner was "denied essential fact finding" during his prosecution.

The Court has not heard argument on the second issue mentioned above. The petitioner has proceeded strictly upon the issue of incrimination, moving for summary judgment upon that issue while holding the second issue in abeyance. Summary judgment procedure is improper in this case. While the Court has considered only the first issue of incrimination, that consideration has not been "summary." The parties have been afforded full opportunity to present evidence and argument to the Court through an evidentiary hearing and otherwise. In addition, the pleadings and evidentiary documents filed in this case have become so voluminous that the best procedure is to dismiss the petition for failure of petitioner to prosecute as to point number two under Rule 41(b) of the Federal Rules of Civil Procedure but with leave for the petitioner to file a new petition on this point, if he so chooses, and to proceed with a full adjudication of the merits of petitioner's first issue. The Court has previously decided, in its order of January 4, 1971, that petitioner has satisfied the exhaustion requirement of 28 U.S.C. § 2254.

The facts in this case are not in dispute.

Petitioner, an attorney, and then administrator of the estate of Jesse Demchak, was informed against in November, 1968, by the State of Florida for the offenses of grand larceny from the estate and issuing worthless checks. During the pendency of that action petitioner filed a number of motions including a motion for the taxation of the

costs of his defense against the county in which he was being tried. In order to qualify for the taxation of costs under the Florida rules, the movant must be determined to be indigent. A hearing to determine petitioner's insolvency was held on February 3, 1969. It is this hearing which constitutes the crux of petitioner's contention.

Upon the demand of the State's Attorney the petitioner was required over his objections to attend and testify at this insolvency hearing. The state demanded and was allowed to examine petitioner as to his indigency and during this examination the state asked petitioner questions pertaining to the crime of larceny for which petitioner was charged. When petitioner was asked whether he had received money from the Demchak estate he objected to the question upon the grounds that it was incompetent, irrelevant and immaterial and in support of that objection entered a proffer of evidence that the hearing was "a de facto substitute for those proceedings otherwise permitted in the state for the pretrial discovery of such facts and circumstances [as the larceny of the Demchak estate] and that—and is, in fact, a proceeding intended by the State to be in lieu of such procedure." To which the judge ruled: "For the purposes of this motion [to tax costs] it's our ruling that in order to be declared insolvent it's admissible testimony to go back and determine any and all funds or sums which may have come into the possession of this defendant, by whatever means, lawful or unlawful. . . ."

Upon this denial of petitioner's motion occurred the following colloquy:

MR. GREER: What the defendant would request, Your Honor, that, in other words, the denial of this motion right there is instruction upon the part of the Court right there to proceed with this motion—that he must, in fact, answer the questions.

THE COURT: It's not our instruction that he answer any question in this proceedings.

MR. GREER: But if he doesn't, then, of course, the motion will be denied.

THE COURT: I think that that's probably a fair statement, but I don't think in any—I don't think in any way does this operate as any—

DEFENDANT: What did you ask me, Mr. Oldham?

BY MR. OLDHAM:

Q. You ready to answer questions, Mr. Davis?

A. Yes.

Q. I show you this document here, which is an inventory of the Jessie Demchak, deceased, recorded in Official Records 377, Page 1005, filed September the 21st, 1967, and ask if you filed this.

A. I caused this instrument to be filed.

Q. Does your signature appear on it?

A. Yes, sir.

THE COURT: Before you continue further interrogation, just for the purposes of the record, so that you know where we're going, I—it's—although it's my ruling that he can answer these questions if he so desires to proceed with this hearing on whether or not he's insolvent, it's strictly up to him, and it's the feeling of the Court specifically that in no way does this act as making the defendant immune from prosecution on anything he might say.

Following the judge's explanation of his ruling, the petitioner continued to object but did in fact answer the questions put to him regarding the Demchak estate. These questions called for highly incriminating responses which were given by petitioner including, for example, that petitioner had taken money from the Demchak estate, that he had used the money for his own personal benefit and that the money was still owing to the estate.

It was then determined by the judge that the petitioner was indigent and his

motion to tax costs was granted. At the same hearing petitioner's motion to dismiss the information was granted on the grounds that the information failed to allege the larcenous intent to permanently deprive the owner of his property. Three days later a new information was issued. Petitioner was arraigned anew and a plea of not guilty was entered in his behalf when he refused to plead upon a claim that he had been immunized from prosecution by the operation of Florida Statutes § 932.29 (1967), F.S.A.[1] Petitioner was tried without a jury, found guilty of grand larceny and sentenced to the maximum term of five years in state prison.

■ Petitioner contends that the acts of the attorney for the State of Florida at the hearing upon the insolvency motion transformed that hearing into a de facto "investigation" as that term is used by Florida Statutes § 932.29 (1967), F.S.A., and that, therefore, by answering the questions asked of him, petitioner was immunized from prosecution by the operation of the aforementioned statute. The question of whether or not the petitioner was immunized by the Florida Immunity Statute is, under the circumstances, not properly before this Court. To make the finding which the petitioner desires would require this Court to interpret the statute in question. The interpretation of state statutes under these circumstances is the job of the state courts. Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 298, 7 L. Ed.2d 207 (1961). In the case of the petitioner, the state has construed the application of the immunity statute to him and found him not to fall within its

veil of protection. Davis v. State, 233 So.2d 641 (2 D.C.A.Fla.1970). Therefore, the Court holds that it is bound by the state's interpretation of its own immunity statute.

■ The issue above should not be confused with the privilege against self-incrimination, which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution. Whether the petitioner here effectively and voluntarily waived this privilege guaranteed to him is a federal question which must be decided according to federal standards. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964).

■ . A person may waive his privilege against self-incrimination, but, in order to be effective, this waiver must be freely and voluntarily given. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Whether a person freely waived this privilege or was coerced into an involuntary and ineffective waiver depends upon whether he was deprived of his "free choice to admit, to deny, or to refuse to answer" the questions presented him. Lisenba v. California, 314 U.S. 219, 241, 62 S.Ct. 280, 86 L.Ed. 166 (1941). This coercion need not be physical to invalidate the waiver. If the person was forced to choose between waiving his privilege or foregoing another substantial benefit, such as his job, property or other guaranteed right, there is no choice at all and the waiver is considered to be compelled and ineffective. Garrity v. New Jersey, *supra*; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Simmons v. United States, 390

---

1. Fla.Stat. § 932.29, F.S.A. provided: No person shall be excused from attending and testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony or evidence, documentary or other-wise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding.

U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

██ The petitioner in the instant case was confronted with precisely such an illusory and impermissible choice between waiving his privilege against self-incrimination or foregoing his valid motion to have the costs of his defense taxed against the county because of his indigency as provided by the Constitution of the State of Florida, Art. 16, § 9, F.S.A. The right of an indigent to representation not dependent upon the depth of his pocketbook is also a well established doctrine under federal constitutional law. E. g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963); Schwander v. United States, 386 F.2d 20 (5 Cir. 1967).

When asked highly incriminating questions by the State's Attorney at the insolvency hearing the defense objected and requested a ruling as to whether he was required to answer. The judge said: "It's not our instruction that he answer any questions in this proceedings." To which his attorney replied: "But if he doesn't, then, of course, the motion [to tax costs] will be denied," and the Court answered: "I think that that's probably a fair statement . . . ." The petitioner then proceeded to answer all of the questions put to him, including many of a highly incriminating nature. Thus the petitioner was obliged to waive his privilege against self-incrimination in order to secure the taxation of costs for his defense under a valid indigency claim. Under these circumstances it is clear that the waiver was not voluntary and thus cannot withstand the constitutional test of validity.

Petitioner contends that the procedure above immunized him from further prosecution for the larceny in question in that the Fifth and Fourteenth Amendment guarantees against self-incrimination require that a person be given "transactional immunity" when compelled to incriminate himself under these circumstances.

A reading of the cases cited by the petitioner in support of this contention reveals a confusion of two distinct issues: (1) The extent of the immunity required when a state compels the waiver of the privilege against self-incrimination under an "immunity statute," and (2) the nature and extent of the safeguards generally afforded to a defendant by the United States Constitution upon an involuntary and compelled waiver of that privilege. Since, as previously mentioned, the state courts have held petitioner not to fall within the purview of the state immunity statute, we are only concerned with the second issue above.

██ The Court does not find petitioner's claim of transactional immunity to be well founded. Generally, the excesses of law enforcement officers and prosecutors in obtaining evidence from persons in violation of their privilege against self-incrimination have been dealt with through the enforcement of the exclusionary rule. E. g., Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Mattox v. Carson, 424 F.2d 202 (5 Cir. 1970). That is, such evidence unlawfully obtained, and the "fruits" thereof may not be used against the accused either by direct introduction of that evidence at trial or by gaining knowledge of other evidence which is subsequently introduced against the accused. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963).

The Court finds the case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) to be especially persuasive under the instant factual situation. In *Simmons* it was held to be reversible error to admit at trial against a defendant incriminating testimony elicited from him at a hearing upon his unsuccessful pretrial motion to suppress certain evidence. Justice Harlan, speaking for the Court, stated:

"Thus . . . [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a

valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."

This Court finds the petitioner here to have been in a situation analogous to that of the defendant in the *Simmons* case and, therefore, holds that the rule in *Simmons* is controlling. Thus, the "immunity" here if it is to be so called, is immunity from the use of the illegally obtained evidence and the fruits thereof against the accused at trial.

■ Petitioner contends that the incriminatory statements made by the petitioner at the insolvency hearing were used against him. He points out that the original information filed by the State's Attorney charged him with the larceny of $10,750 from the Demchak estate. This information was dismissed upon petitioner's motion for reasons previously stated, at proceedings simultaneous with the insolvency hearing. The amended information deleted the allegation of larceny of a specific amount and instead alleged the larceny of an amount in "excess of $100." Petitioner urges that this change in the wording of the information was a prohibited use of testimony extracted where he had admitted converting monies "in excess of $100" from the Demchak estate to his personal use.

Petitioner's contention here is without merit. One hundred dollars is the statutory minimum required in Florida to constitute the crime of grand larceny. Florida Statutes § 811.021 (1967), F.S.A. It is also common in this state for criminal informations to contain this allegation of the theft of a general amount so that it would not be necessary to prove the amount down to the penny in order to secure a conviction.

Thus, that both the amended information and the petitioner used the phrase "in excess of one hundred dollars" is likely to have been a coincidence resulting from the fact that both spoke in terms of the statutory minimum for grand larceny and the fact that it is good pleading for a criminal information to parrot the statutory mimimum. Petitioner has introduced no evidence to prove otherwise. Petitioner was charged with the same crime in the amended information. That this second information was merely better pleading than the first does not mean petitioner's statements were used against him.

■ Secondly, petitioner cites that in response to a defense motion for a list of witnesses upon whose evidence the information was based, the State's Attorney supplied an answer which included the names of the court reporter at the insolvency hearing and the names of three persons bearing the same last name as a decedent whose estate petitioner had administered. Petitioner calls the attention of the Court to that part of the record of the insolvency hearing where the petitioner was asked by the prosecutor:

Q "Mr. Davis, were there any other estates you were handling that you used money from the estate for your personal benefit? If so, what estates?"

A "Brown, Carpenter, Dix, O'Donnell, Ireland, Demchak."

Q "Two of them I'm not familiar with, Mr. Davis. Ireland. Where was that estate probate(d)?"

A "Here."

The prosecutor's answer to the defense motion for a list of witnesses upon whose evidence the amended information was based included Adelaide Ireland, Vincent Ireland, Alice Louise Ireland. Apparently, the state had not previously been aware of these persons.

This is not sufficient "use" to justify the release of petitioner or the reversal

of the conviction. Assuming, but not deciding, that if the state had filed an information against petitioner for the larceny of the Ireland estate, that the information would have been invalid, the same is not necessarily true of the information for the larceny of the Demchak estate.

The facts show the original information for the larceny of the Demchak estate was filed some three months before the insolvency hearing as a result of complaints and inquiries made by the heirs of the Demchak estate to the probate judge after they had received two worthless checks purporting to be a distribution of the assets of the estate. Although the names of the court reporter and the Irelands were included in the state's answer to the defense motion for a list of persons upon whom the information was based, at trial the state needed to call only two witnesses—the brother of the decedent and the bookkeeper at the bank upon which the worthless checks were drawn—in order to prove its case. The tangible evidence at trial consisted of the probate records of the Demchak estate, the two worthless checks and other checks and deposit slips from the petitioner's personal account. The record indicates, and the petitioner makes no allegations to the contrary, that the state had custody of these items of tangible evidence prior to the insolvency hearing.

Neither the Irelands nor the court reporter at the insolvency hearing testified against petitioner at trial. Moreover, there is no allegation by petitioner that they were connected in any way with the evidence introduced at trial. Similarly the statements made by petitioner at the insolvency hearing were not introduced against him at trial. There is nothing in the record to indicate and it is not alleged by petitioner that the state gained knowledge of any of the evidence introduced at petitioner's trial at the insolvency hearing.

It is therefore clear to the Court that neither the testimony improperly elicited from petitioner at the insolvency hear-

ing nor any "fruits" deriving from that testimony were ever used against him. That being the case, petitioner is not being held in custody in violation of the Constitution, laws or treaties of the United States.