333 So.2d 534 (1976)
Leveral "Sparky" RAFFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. W-412.
District Court of Appeal of Florida, First District.
June 4, 1976.
Rehearing Denied July 8, 1976.
*535 Guillermon A. Ruiz and Philip J. Padovano, of Ruiz & Padovano, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
PER CURIAM.
A jury found Raffield guilty of possession of more than five grams of marijuana, and conspiracy to possess more than five grams of marijuana with intent to sell, as charged by the State. He appeals from the judgment of conviction and the sentences of imprisonment.
The issues raised by this appeal are:
1. Whether the trial court erred in denying Raffield's motion to suppress the marijuana seized in a warrantless search.
2. Whether the trial court erred in admitting into evidence the transcript of testimony given by Raffield at his bond reduction hearing.
3. Whether the trial court erred in admitting into evidence a tape recorded statement made by Raffield.
In December, 1973, agents of the Florida Department of Law Enforcement received information from a confidential informant that marijuana was being imported into the state near the Panhandle area, and that Raffield was involved in the operation. Florida Marine Patrol officers located a spot on the bank of a creek, near or adjacent to Raffield's property, where they observed what turned out to be 261 grams of marijuana scattered on the ground, and a piece of a burlap sack. They also observed tire tracks from what appeared to be a tractor-type vehicle, and a gang plank or prow, believed to have been constructed in Raffield's barn. About this time, other agents reported that Raffield, who had previously been on welfare, was showing a lot of money, and apparently had purchased a 40-acre farm in his wife's name. A surveillance post was mounted in a nearby fire tower, from which the spot on the creek was visible. Agents could see portions of Raffield's property from the tower, but the barn, approximately five miles from the spot on the creek, was not visible.
On or about 20 December 1973, a man, thought to be Jorge Soto, purchased a stripped down Winnebago motor home in Jacksonville. The Winnebago was followed to Gainesville and kept under surveillance. On 23 December 1973, at approximately 3:00 P.M., the Winnebago was observed leaving Gainesville and heading north toward the Panhandle area along with a Dodge van and a pick-up truck.
The vehicles stopped at the Rustic Sands Camp Grounds near Mexico Beach. At approximately 1:00 A.M., on 24 December 1973, these vehicles were observed by Florida Department of Law Enforcement agents proceeding up a road leading either to Raffield's farm, or to Highway 71. The agents located at the surveillance points on Highway 71 did not see the vehicles pass on Highway 71. At about 2:30 A.M., the vehicles were observed returning on the same road and the agents noticed that the vehicles appeared to be heavily laden.
The vehicles were followed to Tallahassee where they were stopped at 6:00 A.M. Eastern Standard Time and searched. All of the vehicles contained marijuana and all of the drivers were arrested.
Richard Hackmeyer, an attorney for the Florida Department of Law Enforcement, who was working on the investigation, upon learning of the arrests, directed the agents to search Raffield's barn. He recommended the warrantless search because he feared that the three men arrested in Tallahassee would make phone calls from the jail regarding their arrests, and Raffield would be alerted. At that time Hackmeyer considered probable cause existed to get a warrant, but did not seek to obtain one because of the difficulty in securing a warrant on Christmas Eve, and because *536 he feared that the contraband, thought to be located in Raffield's barn, would be destroyed.
Although Raffield had been under investigation since early December, Hackmeyer conceded that no attempt was ever made to learn of the availability of a magistrate for the purpose of obtaining a warrant should one become necessary. He stated that after the three men were arrested in Tallahassee, no effort was made to obtain a warrant. At approximately 8:00 A.M. Central Time (9:00 A.M. Eastern Standard Time), Officers Von Tronk and Valente, following Hackmeyer's instructions, went to Raffield's farm and conducted a search of the barn. Located in the barn were two vehicles, each of which contained a large quantity of marijuana. Upon discovery of the marijuana, Raffield was placed under arrest.
Raffield's motion to suppress the marijuana was denied. At trial the marijuana found in the barn was introduced into evidence over Raffield's objection and renewed motion to suppress.
On cross-examination of Raffield at his bond reduction hearing, he was asked questions going to the merits of the case which he freely and voluntarily answered. No objections to these questions were made on the ground of self-incrimination but occasional objections were made by his counsel on the ground of relevance. Finally, after numerous self-incriminating answers had been given, defense counsel began to object to further questions on grounds of self-incrimination and the objections when made on such grounds were then sustained. Raffield admitted, among other things, that he had knowledge that marijuana was in the barn. The state at trial offered Raffield's self-incriminating testimony at the bond hearing, and after considering Raffield's objections to its admission, the court ruled that such testimony was freely and voluntarily given and was admissible as a judicial confession. Defense counsel then objected to the admission of only excerpts from the testimony and contended that if any was admitted, the whole of it should be included. The court then admitted all of defendant's bond hearing testimony.
All searches without a search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. The five basic exceptions to the requirement of a search warrant are: Consent; incident to a lawful arrest, with probable cause to search but with exigent circumstances; in hot pursuit; and stop and frisk. The burden is on the State to show that the warrantless search comes within an exception. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The State contends that the exceptions applicable to the facts in this case are consent and probable cause to search with exigent circumstances. Consent must be freely and voluntarily given. Mere acquiescence or submission to authority is insufficient. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Probable cause without exigent circumstances is insufficient. Where possible, officers should anticipate and take action to avoid or prevent emergencies or exigent circumstances from arising. United States v. Rosselli, 506 F.2d 627 (7 Cir., 1974).
In the case before us, Raffield was told by an agent that his barn was going to be searched. He replied that he was guilty and "it's in there". The search was conducted. Raffield did not specifically consent to the search of the barn. He merely acquiesced or submitted to authority. However, we need not determine whether, under the facts of this particular case, his acquiescence and conduct amounted to consent because the facts do clearly reveal probable cause and exigent circumstances. There was reasonable basis for the belief that the three drivers arrested in Tallahassee would telephone Raffield to warn him; *537 that the removal of contraband from the barn could not be prevented by the agents; that the barn could not be secured because of the safety factor; and that obtaining a search warrant on Christmas Eve would be impossible or long delayed.
As to his second point, the testimony Raffield gave at his bond reduction hearing, in which he admitted guilt to the charges against him, was relevant to the bond hearing and was admissible in the absence of objection on the ground of self-incrimination. It was freely and voluntarily given without any compulsion, threats, or promises. Compare Brumit v. State, Fla.App.2d 1969, 220 So.2d 659.
Appellant's third point relates to admission of his tape recorded statement. Although a portion of the recording, containing incriminating admissions of Raffield, was inaudible and unintelligible, the trial court admitted the tape into evidence. We have listened to the tape which is approximately 25 minutes long and it was unintelligible in four places which consumed only a few seconds of the time. The tape was properly admitted into evidence. See Gomien v. State, Fla.App.3d 1965, 172 So.2d 511.
Finding no prejudicial error, the judgment and sentence appealed are
AFFIRMED.
BOYER, C.J., and McCORD, J., concur.
MILLS, J., dissents.
MILLS, Judge (dissents):
I dissent.
In the case before us, Raffield was told by an agent that his barn was going to be searched. Neither his consent nor permission was sought. Raffield replied that he was guilty and "it's in there". The search was conducted. Raffield did not consent to the search of the barn, he merely acquiesced or submitted to authority. This is insufficient.
The facts in this case show probable cause. They do not show exigent circumstances. The Florida Department of Law Enforcement felt that the three drivers arrested in Tallahassee would telephone Raffield to warn him; that the removal of contraband from the barn could not be prevented by the agents; that the barn could not be secured because of the safety factor; and that obtaining a search warrant on Christmas Eve would be impossible.
The risk of the telephone call was not an exigent circumstance. If the risk of the call created an emergency, this could have been prevented by leaving an agent with the three arrested drivers while a warrant was obtained.
The evidence adduced by the State was insufficient to support its contentions that the Florida Department of Law Enforcement could not prevent the removal of contraband and could not safely secure the barn. There were at least eight agents in the vicinity of the barn and no evidence that anyone was at the barn other than Raffield and his family. Raffield had no known propensity for violence.
Not only did the State fail to obtain a warrant, but it made no plans to obtain one. Nor did it give a satisfactory reason for not obtaining a warrant.
In order to be effective, a waiver of privilege against self-incrimination must be freely and voluntarily given. If a person is forced to choose between waiving this privilege or foregoing a substantial benefit, such as a guaranteed right, there is no choice, and the waiver is ineffective. Davis v. Wainwright, 342 F. Supp. 39 (D.C. 1971). For example, a defendant may refuse to testify, and thus be compelled to give up his right to reasonable bail. In my judgment, a defendant should not be compelled to give up his Fifth Amendment rights in order to assert his right to reasonable bail.
*538 Raffield testified at his bond reduction hearing about his family occupation, property, and financial condition. On cross-examination he was asked questions going to the merits of the case and over objection admitted, among other things, his knowledge that marijuana was in the barn. Over objection, the portion of the transcript of the bond reduction hearing containing Raffield's testimony was admitted into evidence.
The testimony Raffield gave at his bond reduction hearing, in which he admitted guilt of the charges against him, was erroneously admitted over objection of his attorney at trial. Under the circumstances here, he did not freely and voluntarily waive his privilege against self-incrimination.
I would reverse the judgments of conviction and sentences.