James Allen Youtz was convicted for trafficking in marijuana and sentenced to twenty years' imprisonment and fined $25,000. His wife, Linda Pope Youtz, was convicted for possession of marijuana and sentenced to ten years' imprisonment. Their convictions are reversed because the police had no authority to enter their residence, make the arrests, and seize the marijuana.
The controlling facts on the governing issue of this case are undisputed. In March of 1984, the Auburn Police Department was ending a six-month undercover drug operation which ultimately resulted in twenty-nine arrests. Officer Alex Smith testified that "we were in the process of closing down our six-month investigation, and making what we call a roundup, and making arrests on people who we had been buying drugs from over the last six months."
Between 7:00 and 8:00 on the evening of March 27, 1984, Officer Smith, working undercover, went to the residence of Brad Harris and Kevin Lamphere on Payne Street and asked Harris about purchasing marijuana. Smith had previously purchased drugs from both Lamphere and Harris. Harris told Smith that Andy Allen was "making a run" which meant that "he was going after some drugs." Allen returned to the residence and sold a bag of marijuana to Phillip Meeks, who sold part of the bag to Officer Smith. In addition to this transaction, the police had purchased drugs from Allen on two prior occasions.
Smith heard Allen say that he needed more marijuana and he overheard Allen telephone "someone named Jimmy" and state "that he was coming back to pick up another bag, . . . And he wanted the caller [sic] to know that he was on his way over to get it." Allen then left and was arrested about one block from the residence.
Smith also left the residence and met with other officers who had been keeping Smith under surveillance. These officers then returned to the residence and arrested Meeks, Harris, and Lamphere and took them and Drew Warman, who was also present at the residence, to the police station.
Sergeant Gary Black of the Auburn Police Department testified that around the first of February or March, before Allen had been arrested, they had followed Allen to the defendants' residence. They subsequently ascertained that the residence belonged to the defendants and that "the power was registered" to the defendants on February 16, 1984. After his arrest, Allen was brought to the police station around 8:00 that night. He "was willing to cooperate." He told the police his source *Page 191 
was Jimmy Youtz and agreed to make another buy. Detective Black instructed him "to pay Mr. Youtz the money that he owed him for the previous purchase of marijuana. Also to buy another half an ounce of marijuana."
Allen was "wired" with a "body transmitter", provided with money, and taken to the defendants' residence on East Glenn Street at approximately 11:00 that night. The police remained outside, concealed and undetected, where they monitored the conversation inside the house. Five to seven minutes after Allen left the police car to enter the defendants' residence, Officers Smith and Black went to the residence and knocked on the door. Shortly after 11:00 that night, Jimmy Youtz answered the knock wearing a bathrobe. Officer Black identified himself and Officer Smith and asked Youtz four or five times who he was, but Youtz did not answer. Black then placed him under arrest, handcuffed and searched him, finding a bag of marijuana in the pocket of the robe. Apparently, this was the marijuana that Allen had requested to purchase. Allen and one Bryan Greenshields were sitting in the den and were arrested. Mrs. Youtz was found in the master bedroom but was not arrested that night. The Youtzes' nine-year-old daughter was sleeping in her own room. After the three men were arrested, five police officers searched the house for approximately two hours. The scope of that search is also raised as an issue in this case and would be a particular cause for concern were it not for this court's finding upon the issue of the entry itself. "An arrest within a home does not provide a license for the police to search the entire residence for evidence." United States v.Satterfield, 743 F.2d 827, 845 (11th Cir. 1984), cert. denied,471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). "[S]earch of a residence merely because a suspect is arrested inside does not follow as a matter of routine. . . . An arrest even on probable cause does not itself automatically provide exigent circumstances justifying a warrantless search of the suspect's house." United States v. Alfonso, 759 F.2d 728, 742 (9th Cir. 1985).
Officer Smith candidly admitted the only purpose in going to the defendants' residence was to arrest Mr. Youtz. There was never any attempt made to obtain either a search warrant or an arrest warrant.
Mrs. Youtz was not arrested the night of the raid but "turned herself in" at the police station after having been telephoned by the police one week later.
In denying the defendants' motion to suppress, the trial judge stated his reasons for the record. A portion of his comments follow:
 "At the time they were outside the home, the officers had neither a warrant of arrest, nor a search warrant.
 "However, the Court is of the opinion that at that time the officers had probable cause for believing that criminal activity was afoot in that house, due to the radio transmission that they were receiving from the informant in the house. And the testimony was, that they couldn't identify, but they heard three different male voices, whether or not there was more people there, they didn't know. They just didn't know at that time. And they did know, or had reason to believe that criminal activity was afoot, in that, they were obviously hearing about a sale taking place from somebody to the informant there.
 "The Court must look, first, to see did they have sufficient information at that time to secure a warrant of arrest? Frankly, I don't think they did, because they could not swear themselves, as to who was making the sale. There was a sale going on, but who was making the sale. I don't know how they would have even gotten an arrest warrant at that time.
 "Did they have time, or should they have gotten a search warrant? Of course, that is always the ideal thing to do. But, this was at 11:00 at night and to get a search warrant in Alabama at nighttime, you have got to have more than just probable cause; you have got to be able *Page 192 
to swear that it is in there. And for that reason a search warrant could not be secured for a search and the search would have to be done the next morning. Of course, a search warrant could have been secured during the night hours, but it couldn't commence until the next morning. In order to secure the house, I feel, that they would have great difficulty in securing this house, that is, keeping anyone from leaving or taking anything out of the house and disposing of anything without the occupants of the house, under these circumstances, knowing something was happening, because you have an informant in there, in the house at that time. And I suspect that that informant would have gotten pretty upset if he had been left dangling out there for any period of time.
 "So, I feel that at the time the officers went to the doorway of this house, they had probable cause for believing that a crime was taking place in the house. And I feel at that time that they had a right to enter the house, because of the exigent circumstances surrounding this particular event. And of course, all of these cases on searches without a warrant must turn, or fall on the specific facts in that particular case."
After concluding that the warrantless arrests and searches were proper, the trial judge stated:
 "All of this I have set out for the record, so ya'll will understand my thinking. I want you to realize this, and particularly the officers, I am not one who favors searches of homes without an arrest warrant or a search warrant, because I've always said, you know, the one place that you have the right to be, and some folks call it the right of privacy, I call it the right to be left alone and that is left alone in our homes. But, when we do things that violate the law, then of course we don't have the right to be left alone to flagrantly violate the law. So, I may not ever approve again of a search without a warrant, and that's why I'm telling ya'll now that it is a close question, but under the circumstances in this case, I feel that at the time the officers had probable cause and that there were exigent circumstances that would authorize them to enter the house and conduct a search that they entered at that time."
"[M]ore than mere probable cause must be present to justify a warrantless entry of a private residence to arrest" or to search. People v. Wilson, 86 Ill. App.3d 637, 42 Ill.Dec. 279, 282, 408 N.E.2d 988, 991 (1980). In the absence of exigent circumstances, the authority to make a warrantless arrest ends at the threshold of a private dwelling and the police may not make a warrantless, nonconsensual entry into a suspect's home to effectuate a routine felony arrest. Payton v. New York,445 U.S. 573, 576, 100 S.Ct. 1371, 1374-75, 63 L.Ed.2d 639 (1980). See also Steagald v. United States, 451 U.S. 204, 205-06,101 S.Ct. 1642, 1644-45, 68 L.Ed.2d 38 (1981) (in the absence of exigent circumstances or consent, the Fourth Amendment prohibits law enforcement officers from searching for the subject of an arrest warrant in a third party's home without first obtaining a search warrant). "Although a warrantless search and seizure in a home is presumed to be unreasonable, . . . courts will uphold searches of homes based on both probable cause and exigent circumstances." United States v. Satterfield, 743 F.2d at 843. All warrantless searches are per se unreasonable except for a few specifically established and well-delineated exceptions. Mincey v. Arizona, 437 U.S. 385,390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). "Searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances." United States v.Karo, 468 U.S. 705, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530
(1984).
Even circumstances traditionally thought to be exigent, like the imminent danger that evidence will be destroyed, will not justify a warrantless entry into a private home when the State's interest is only to arrest for a minor offense. Welshv. Wisconsin, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099,80 L.Ed.2d 732 (1984). In this *Page 193 
regard, it has been held that the distribution of a controlled substance is not a "grave offense." State v. Bennett,295 N.W.2d 5, 7 (S.D. 1980) ("Although the offense for which defendant was sought was certainly not trivial, in view of the substantial period of time that elapsed between the date of the offense [July 19, 1976] and the date of the arrest [October 20, 1976], it can hardly be said that the charge of distributing a controlled substance was a grave offense in the sense that immediate action was necessary to apprehend the perpetrator.").
In proving that a warrantless arrest in, or search of, a private residence was reasonable, the State has the burden of proof. "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh, 466 U.S. at 750, 104 S.Ct. at 2098. "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." Welsh, 466 U.S. at 749-50, 104 S.Ct. at 2097; UnitedStates v. United States District Court, 407 U.S. 297, 318,92 S.Ct. 2125, 2137, 32 L.Ed.2d 752 (1972). "`In applying the exigent circumstances doctrine, the burden is on the [government] to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed.'United States v. Selberg, 630 F.2d 1292, 1295 (8th Cir. 1980)."United States v. Morales, 737 F.2d 761, 764 (8th Cir. 1984).
Assuming that the officers had probable cause to believe that a felony was being committed within the defendants' residence, the rights of the police to enter that residence, arrest Mr. Youtz, and search the entire house depend on the existence of exigent circumstances. "[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed." Welsh, 466 U.S. at 753, 104 S.Ct. at 2099;Mincey, 437 U.S. at 393, 98 S.Ct. at 2414. "[T]he mere presence of narcotics, without more, is not such an exigent circumstance as would permit entry into private premises without a proper warrant." People v. Lee, 83 A.D.2d 311, 444 N.Y.S.2d 100,102-103 (1981), cert. denied, 460 U.S. 1044, 103 S.Ct. 1443,75 L.Ed.2d 798 (1983). See also People v. Ouellette, 78 Ill.2d 511, 36 Ill.Dec. 666, 669-70, 401 N.E.2d 507, 510-11 (1979). "The presence of contraband without more does not give rise to exigent circumstances." United States v. Torres, 705 F.2d 1287,1297 (11th Cir. 1983).
There have been various attempts to formulate an all encompassing definition of exigent circumstances. See Harbaugh and Faust, "Knock on Any Door" — Home Arrests After Payton andSteagald, 86 Dick.L.Rev. 191 (1982); Donnino and Girese,Exigent Circumstances For A Warrantless Home Arrest, 45 Alb.L.Rev. 90 (1980); Comment, Warrantless Arrests:Justification By Exigent Circumstances, 6 Hamline L.Rev. 191 (1983); W. LaFave, 2 Search and Seizure § 6.5 (1978). However, "[t]he exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." United States v.Satterfield, 743 F.2d at 844. The possibility that evidence will be destroyed is an exigent circumstance widely recognized by the courts. Note, Exigent Circumstances for Warrantless HomeArrests, 23 Ariz.L.Rev. 1171, 1177 (1981). "[W]hen police officers have probable cause to search a residence for evidence, and they reasonably believe that such evidence is threatened with loss from any source, they may make a warrantless search of the premises in order to preserve and protect that evidence." Case note, Residential Searches toPrevent the Destruction of Evidence: An Emerging Exception tothe Warrant Requirement, 47 U.Colo.L.Rev. 517, 532 (1976); Comment, Residential Searches to Prevent Destruction ofEvidence: A Need for Strict Standards, 70 J.Crim.L. Crim. 255 (1979); 2 Search § 6.5 (b). *Page 194 
In finding the existence of exigent circumstances due to the threatened destruction of evidence, the courts have applied such broad tests as the "`great likelihood that the evidence will be destroyed or removed before a warrant can be obtained,' that the evidence is `threatened with imminent removal or destruction,' or that the police `reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.'" 2 Search at p. 438, § 6.5 (b).
 "When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, . . .; (2) reasonable belief that the contraband is about to be removed, . . .; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, . . .; (4) information indicating the possessors of the contraband are aware that the police are on their trail, . . .; and (5) the ready destructibility of the contraband and the knowledge `that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic'. . . ." United States v. Rubin, 474 F.2d 262, 268-69 (3rd Cir. 1973) (citations omitted). See also 2 Search at pp. 439-450.
In this case there was no testimony of the amount of time necessary to obtain a warrant. The evidence was merely that there was no attempt made to secure either an arrest or a search warrant. Inconvenience and slight delay are never "very convincing reasons" for not obtaining a warrant. Johnson v.United States, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436
(1948). "[T]he modern decisions state over and over again that law enforcement officers must have a good reason for not getting a warrant, especially when the search is of the home."United States v. Janik, 723 F.2d 537, 547 (7th Cir. 1983). In his order, the trial judge found that "a search warrant could have been secured during the night hours." The trial judge also found that the police could not have obtained a nighttime search warrant because they could not comply with Alabama Code 1975, § 15-5-8, and state "positively that the property is on the person or in the place to be searched." Our review convinces this Court that this requirement could have been satisfied. "The statute does not, however, require an absolutely positive and unequivocal statement." Collins v.State, 410 So.2d 463, 465 (Ala.Cr.App. 1982). "Under the prevailing view, this requirement is not to be read literally; there need not be personal positive knowledge by the affiant, but only information which will justify the affiant in asserting a positive belief that the property is there, as contrasted to a belief that the property is probably on the premises." 2 Search § 4.7 at p. 116. "[T]he positive averment requirement of § 15-5-8 may be satisfied by hearsay information." Dickerson v. State, 414 So.2d 998, 1012
(Ala.Cr.App. 1982).
 "`Several cases construing the positivity standard as contained in the former federal rule did not construe it to require a significantly higher standard than probable cause. Thus, it was stated in United States v. Daniels, 10 F.R.D. 225 (D.C.N.J. 1950):
 "`It is our opinion that the rule requires nothing more than an explicit statement, supported by positive evidence, as distinguished from negative evidence "that the property is in the place to be searched." The explicit statement may not rest upon inferences drawn from the absence of evidence. The rule requires averments of fact sufficiently persuasive to support a reasonable inference that the property is in fact on the premises. A more rigid *Page 195 
construction would require proof beyond a reasonable doubt that the property is in the place to be searched. Such a construction would enable the criminal to completely conceal an illegal enterprise behind an insurmountable barrier, provided, of course, he pursued it only at night. "If the positivity requirement were interpreted literally, it would be practically impossible to obtain a warrant to search premises at night." For example, if a police officer had observed drugs in a building, and then left the building in order to secure a warrant from the nearest available magistrate, he could not be positive that the drugs were in the building at the time that he gave the oath. The language must be construed to equate "positive" with being reasonably certain.'" (Citations omitted.) Johnson v. State, 617 P.2d 1117, 1123 (Alaska 1980), quoted in Dickerson, 414 So.2d at 1011-1012.
Allen had not seen marijuana in the Youtz residence other than that which he had previously purchased because Mr. Youtz always went to another part of the house to get the marijuana. Before the police left the station they intended to arrest Mr. Youtz. They knew that Allen was a drug dealer, that Mr. Youtz was Allen's source, that Allen had recently purchased marijuana from Mr. Youtz and still owed him one-half of the purchase price of that sale, and that, almost immediately before his arrest, Allen had arranged to purchase some more marijuana from Mr. Youtz that night. This information justified a positive belief that marijuana was in the Youtz's residence and satisfies the requirements of § 15-5-8.
Furthermore, if the positive averment requirement of § 15-5-8
is literally and technically construed, the police had no more concrete information when they arrested Youtz than they had when they left the station, because Allen still had not actually seen any marijuana. Youtz was arrested after he had gone to get the marijuana from another part of the house but before he had delivered it to Allen.
The testimony does not furnish a reasonable belief that the marijuana was about to be destroyed, that the defendants had any indication that the police were aware of their illegal activities, or that the activities of either the police or their agent, Allen, had aroused the defendants' suspicions. Indeed, "the possibility of destruction of evidence exists in every narcotics investigation." United States v. Moreno,701 F.2d 815, 818 (9th Cir. 1983), cert. granted and judgment vacated, 469 U.S. 913, 105 S.Ct. 286, 83 L.Ed.2d 223 (1984) ("In order to justify forced entry without an announcement of authority and refusal of admittance, there must be some evidence to support the suspicion that contraband will be destroyed."). Defense counsel was well prepared for the suppression hearing and elicited testimony from the police officers that there was no reason to suspect any attempted escape by the defendants and that there was no threat of physical harm to the police, their informant, or anyone else. Although Allen told the police Mr. Youtz had a shotgun, he also told them that the gun was used for hunting and that Youtz was not a violent person. "The mere fact that police have information that a weapon is located within a suspect's apartment, however, does not justify a warrantless entry."People v. Lott, 102 A.D.2d 506, 478 N.Y.S.2d 193, 196-97
(1984). Here, the very manner in which the search was conducted once the police were inside the defendants' house convinces us that there was never any apprehension of harm or injury. The room in which the Youtzes' nine-year-old child was sleeping was apparently never searched.
The only possible suggestion of threatened destruction of marijuana was speculative, conjectural, and caused by the police officers' own conduct. Officer Black stated that the "possibility of a relationship between Warman and Youtz" was a "consideration" in the decision to arrest Youtz that night. Although Warman was present and "had been involved with Mr. Allen and the other participants at the Payne Street drug arrest," he agreed to make a statement *Page 196 
and was not arrested. He was taken to the police station where he made his statement and was "permitted to leave."
Officer Black testified that he had no knowledge that Warman knew Mr. Youtz, although Warman did know Allen. Officer Black testified that "normally in drug circles people know each other." He "had reason to believe that it was a good possibility [that Warman knew Mr. Youtz], because Warman was included with a lot of the sales that were made from the Payne Street address [Harris residence], and in which Allen was involved. And it was just reason to believe that it's a good possibility that they did know each other." Officer Black admitted that he had never seen Mr. Youtz at the Harris residence and never followed Warman to Youtz's house. The record does not show why Warman was not arrested or why he was permitted to leave the police station before Mr. Youtz was arrested. Officer Black's suspicion that Warman might warn Mr. Youtz is insufficient to create an exigent circumstance justifying the warrantless arrests in, and the search of, the Youtz residence.
"Exigent circumstances require more than a fear or apprehension that evidence will be destroyed. Hindsight cannot be a substitute for prior knowledge of an agent that a defendant or his associate is really in a position to destroy evidence. No doubt there will be occasions when agent fears, based upon a suspicion or hunch, will be realized and evidence will be destroyed. But that is not sufficient reason to permit guesswork to be a substitute for knowledge beforehand of the peril of destruction of evidence." United States v. Levine,500 F. Supp. 777, 780-81 (W.D.N.Y. 1980). A mere speculative claim that the evidence might have been destroyed if it had not been seized without a warrant is insufficient. Merrick v. State,338 So.2d 77, 78 (Fla.Dist.Ct.App. 1976). United States v.Rosselli, 506 F.2d 627 (7th Cir. 1974); Raffield v. State,333 So.2d 534 (Fla.Dist.Ct.App. 1976). "Mere fear or apprehension alone that evidence will be destroyed will not justify a warrantless entry of a private home." United States v. Perez,700 F.2d 1232, 1237, appeal after remand, 714 F.2d 52 (8th Cir. 1983), cert. denied, 468 U.S. 1217, 104 S.Ct. 3587,82 L.Ed.2d 884 (1984); United States v. Morales, 737 F.2d at 765. "Mere guesswork or whim will not do." United States v. Cuaron,700 F.2d 582, 586, n. 4 (10th Cir. 1983).
Here, we note that the arrest and search were made pursuant to a preconceived plan and not in response to any exigency. This drama is but one variation of the standard "buy-bust" warrantless arrest. Alex Smith testified that "as far as a drug arrest goes, . . . [a buy-bust is] where you make a sale case on someone and immediately thereafter you arrest them; as opposed to making cases over a long period of time and waiting to arrest several people at one time." The police cannot justify a warrantless search on the basis of exigent circumstances of their own making. United States v. Thompson,700 F.2d 944, 950 (5th Cir. 1983). The police planned to arrest Jimmy Youtz before they ever left the police station. "A `planned' arrest is one which is made after a criminal investigation has been fully completed at another location and the police make a deliberate decision to go to a certain place, either the arrestee's home or some other premises where he is believed to be, in order to take him into custody. . . . Courts have understandably been reluctant to accept police claims of exigent circumstances in these situations, for it ordinarily appears that whatever exigencies thereafter arose were foreseeable at the time the arrest decision was made, when a warrant could have readily been obtained." W. LaFave, 2 Searchand Seizure § 6.1, at p. 391 (1978). See also People v. Hogan,649 P.2d 326, 331 (Colo. 1982) ("Given the court's finding that the officers went to the defendant's home to effect a warrantless arrest inside the home, any arguable emergncy necessarily would have its source in the officers' presence at the home in disregard of the warrant requirement. If a purported exigency arising directly from a violation of the warrant requirement can serve as the *Page 197 
legal basis for the officers' warrantless entry into the home, then the warrant requirement serves no meaningful function and the enhanced privacy interest attaching to one's residence is illusory."); People v. Wilson, 86 Ill. App.3d 637, 42 Ill.Dec. 279, 283, 408 N.E.2d 988, 992 (1980) ("To approve the consequences of such an arrest would render Fourth Amendment protections vulnerable to possibly even more imaginative government-created exigencies and quickly render the warrant requirement a nullity.").
Not only was the arrest prearranged, but the felony was "engineered".
 "We note, as did the district court, that a felony may have been in progress in Thompson's home, . . . The far-reaching discussion by the majority of the right to privacy in one's home in Payton, 445 U.S. at 586-98, 100 S.Ct. at 1380-86, suggests, however, that the mere suspicion that a felony is in progress would not in and of itself permit entry, unless the court were prepared to hold that the occurring felony is itself an exigent circumstance. While in this case, more than mere suspicion existed that a felony was in progress, that felony was engineered by the government under circumstances allowing enough time to obtain a warrant. This being so, the felony itself cannot serve to justify the nonconsensual entry into Thompson's home." United States v. Thompson, 700 F.2d at 947, n. 1.
The present case is virtually identical with People v. Soto,96 A.D.2d 741, 465 N.Y.S.2d 82, 83 (1983):
 "The warrantless entry of the police into defendant's apartment to arrest him for the sale of drugs was unlawful (see Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639) and the contraband seized as a result of the police search of the premises after the arrest must be suppressed. Defendant was arrested upon completion of the sale to an informant who had been equipped by the police with a hidden transmitter. The police monitored the entire transaction via the transmitter and they moved in to make the arrest when the informant broadcasted a prearranged signal. The police had no indication that defendant was aware either that he was dealing with an informant or that the transaction was being monitored, and they had no evidence that defendant was armed or that the informant was in any danger. The arrest was made pursuant to a preconceived plan and not in response to any exigency (see United States v. Velasquez, 626 F.2d 314 (3 Cir. 1980); cf. People v. Clements, 37 N.Y.2d 675, 376 N.Y.S.2d 480, 339 N.E.2d 170 [(1975)], cert. den. sub. nom. Metzger v. New York, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 762 [(1976)]). Further, by allowing the informant into his apartment, defendant did not consent to a police entry. This case is distinguishable from United States v. Ruiz-Altschiller, 694 F.2d 1104 (8 Cir. 1982); United States v. White, 660 F.2d 1178 (7 Cir. 1981), and United States v. Collins, 652 F.2d 735 (8 Cir. 1981), cert. den., 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 [(1982)], since the defendant here did not invite an undercover police officer into his residence."
The exigent circumstance of destruction of evidence is an exception to the requirement that a warrant is required to search a residence or arrest a person in a private dwelling without a warrant. "[T]he exception must not be permitted to swallow the rule: in the absence of a showing of true necessity — that is, an imminent and substantial threat to life, health or property — the constitutionally guaranteed right to privacy must prevail." People v. Smith, 7 Cal.3d 282, 101 Cal.Rptr. 893,895, 496 P.2d 1261, 1263 (1972).
While a portion of the State's argument concerning the existence of exigent circumstances appears to be based on the fact that criminal activity was afoot, the Attorney General also argues, "The exigency of the situation is demonstrated by the number of people in the house and the police officers not knowing how many people were actually inside the house and whether *Page 198 
or not there were additional weapons which could threaten the police officers or other people inside the house." Appellee's brief, pp. 15-16. The Attorney General and the trial court both reach the wrong conclusion because "no exigency is created simply because there is probable cause to believe that a serious crime has been committed." Welsh, 104 S.Ct. at 2099. The teaching of Payton was that even when the police know a serious crime is being committed inside a residence, they must have a warrant to enter unless exigent circumstances are present. "[T]he long-settled premise [is] that, absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within." Payton,445 U.S. at 587-88, 100 S.Ct. at 1381.
 "Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Johnson, 333 U.S. at 14, 68 S.Ct. at 369.
"Those suspected of drug offenses are no less entitled to that protection [of the warrant requirement of the Fourth Amendment] than those suspected of non-drug offenses." Karo,468 U.S. at 717, 104 S.Ct. at 3305.
Under the circumstances of this case, the police had no authority to enter the defendants' home without either an arrest or search warrant.[1] The motion to suppress was due to be granted because the contraband seized constituted "fruits of the poisonous tree." Wong Sun v. United States, 371 U.S. 471,83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The narcotics seized in the defendants' home were illegally obtained and the convictions of both James Allen Youtz and Linda Pope Youtz must be reversed and the cause remanded.
REVERSED AND REMANDED.
All Judges concur.
[1] We recognize that an arrest warrant is not a substitute for a search warrant. United States v. Woods, 560 F.2d 660, 666 (5th Cir. 1977).